RICHARD C. STOCKTON, APPELLANT, *v.* JAMES C. FORD.

Where there was a judgment which had been recorded under the laws of Louisiana, and thus made equivalent to a mortgage upon the property of the debtor, and the plaintiff assigned this judgment, and was then himself sued and had an execution issued against him, his rights under the recorded judgment could not be sold under this execution, because he had previously transferred all those rights.

It was not necessary for an assignee of this recorded judgment, who was defending himself in chancery, by claiming under the assignment, to notice in his pleading an allegation in the bill that a release of the judgment was improperly entered upon the record. His assignment was not charged as fraudulent.

The attorney who had recovered the judgment which was thus recovered and assigned, was not at liberty to purchase it when his client became sued and execution was issued against him.

THIS was an appeal from the Circuit Court of the United

States for the District of Louisiana, sitting as a court of equity. The suit was originally brought by Stockton in the District Court (State court) of Louisiana, by petition, to enforce a judicial mortgage against a plantation and slaves in the parish of Carroll, which once belonged to Nicholas W. Ford, but at that time was in the possession of James C. Ford, the defendant below, and appellee here. Ford appeared in the State court, and, being a citizen of Louisville, Kentucky, caused the suit to be removed to the Circuit Court of the United States for the Eastern District of Lousiana, where the cause was treated as a suit in chancery for the foreclosure of a mortgage.

The whole of the transactions connected with the suit were very complicated, but it will not be necessary, under the opinion of the court, to state them fully. The following summary will render them intelligible.

On March 11, 1835, the respondent, James C. Ford, sold and conveyed, to said Nicholas W. Ford, several parcels of land and a number of slaves, situate in said parish of Carroll, for the consideration of $80,000, payable in five annual instalments of $16,000 each, the said Nicholas W. Ford thereby giving to the said James C. Ford a mortgage upon the said land and slaves, to have the force and effect of a judgment confessed, for said $80,000.

On May 1, 1837, Roger B. Atkinson, of Vicksburg, drew his bill of exchange in favor of William B. Pryor upon N. & E. Ford & Co., of New Orleans, for $7,442.74, payable seven months after date. This bill was accepted by the drawees, but was not paid, and after it was protested Pryor became the holder and owner of it. The firm of N. & E. Ford & Co. was composed of Nicholas W. Ford, Edward Ford, and William F. Markham.

On June 10, 1837, three only out of the five annual instalments having been paid to James C. Ford by Nicholas, and James having come under other liabilities for Nicholas, Nicholas executed a mortgage of the land and slaves to secure the whole, and added other slaves.

On April 25, 1838, Nicholas mortgaged an additional number of slaves, with the stock, personal property, and crop.

On May 18, 1839, Nicholas mortgaged the then growing crop of corn and cotton.

In 1839, Pryor brought a suit in the Commercial Court of New Orleans against N. & E. Ford & Co., upon the bill of exchange.

On November 25, 1839, William Ford, Jr., a brother of Nicholas W. and James C. Ford, then aged nineteen years,

20*

and theretofore residing with his father, William Ford, in the county of Bourbon in the State of Kentucky, appeared at the chambers of the judge of the Ninth District Court, Parish of Carroll, Louisiana, and obtained a decree for emancipation, dispensing him from the time prescribed by law for attaining the age of majority, pursuant to the act approved January 23, 1829.

On November 26, 1839, Nicholas sold to William Ford, Jr. all the property in the parish of Carroll, for certain promissory notes.

In December, 1839, judgment was rendered in favor of Pryor in the suit upon the bill for $ 7,442.74, with interest at five per cent. from December 4, 1837.

Mr. Stockton, the appellant, was afterwards employed by Mr. Pryor to attend to his claim against N. & E. Ford & Co., and, entertaining a doubt whether the judgment so recovered was sufficiently specific as to the persons against whom it was rendered, in December, 1839, commenced a suit in the Circuit Court of the United States for the Eastern District of Louisiana, in favor of Pryor, against Nicholas W. Ford, who was the only member of said firm residing in said district, to recover the amount of said bill of exchange.

To this suit Mr. Nicholas W. Ford appeared, and pleaded a former recovery by Pryor, in the Commercial Court of New Orleans, upon said bill, against all the members of said firm of N. & E. Ford & Co., and on the trial of said cause, in support of said plea, produced the record of said judgment so rendered by said Commercial Court, which the court held to be a judgment between the same parties for the same cause of action, and dismissed the suit, with costs.

On March 12, 1840, Pryor assigned his judgment to Jones, as follows : —

"I hereby transfer to Dr. Joseph Jones all my right, title, and interest in a certain judgment in my favor, against N. & E. Ford & Co. of New Orleans, obtained in the Circuit Court of Louisiana, at New Orleans, for about eight thousand dollars, more or less. The said Jones first paying the attorney's fees and all other costs out of the proceeds of said judgment, and then applying the balance to the payment of such debts of mine as said Jones may be responsible for, and the remainder, if any, to be paid over to me.

"Wm. B. Pryor.

"*Vicksburg*, 12th March, 1840."

Jones afterwards assigned this judgment to James C. Ford, the appellee.

On January 2, 1841, the judgment in favor of Pryor was recorded in the mortgage book, making it equivalent to a mortgage.

" I, Felix Bosworth, parish judge in and for the parish of Carroll, in the State of Louisiana, do certify the within copy of judgment to be recorded in my office, in mortgage book B, folio 162.

" Given under my hand and seal of office, this 2d day of January, A. D. 1841.

[L. S.]                       " Felix Bosworth, *Parish Judge*."

On May 12, 1841, William Ford, Jr. sold back to Nicholas all the property conveyed on the 26th of November, 1839.

On the same day Nicholas sold and conveyed all the property back to James C. Ford.

On the 7th of February, 1842, Charles M. Way and E. T. Bainbridge recovered a judgment in a suit commenced by them in the Commercial Court of New Orleans, against Pryor and Howard, by which, after a discontinuance as to Howard, they recovered from the defendant, William B. Pryor, $718.12, with five per cent. interest from the 22d of April, 1847, and costs of suit, with privilege on the property attached. Mr. Robert Mott was the attorney who prosecuted the suit for Way and Bainbridge, and Mr. Stockton, the appellant, defended the suit for Pryor.

On February 17, 1842, Felix Bosworth, parish judge of the parish of Carroll, and *ex officic* recorder of mortgages, entered on the mortgage book a release of the mortgage resulting from the recording of the judgment of Pryor against Ford & Co. by writing across the face of the record the following words: " This mortgage released by payment in full, February 17th, 1842. — Felix Bosworth, *Parish Judge*."

On the 26th of February, 1842, execution was issued on said judgment against Pryor, to the sheriff of said Commercial Court, upon which said sheriff seized, and, after all legal formalities had been complied with, advertised for sale, the right, title, and interest of William B. Pryor in the said judgment recovered in the Commercial Court against N. & E. Ford & Co. for $7,442.74, with interest at the rate of five per cent. per annum, from the 4th of December, 1837; and on the 17th day of March, 1842, pursuant to such seizure and advertisement, said sheriff sold the said judgment of Pryor against N. & E. Ford & Co. to the appellant, for the sum of $300, and on the 19th of April, 1842, conveyed the same to him by deed.

Mr. Stockton was, at the time of the purchase, the holder

of a note drawn by said William B. Pryor, payable to the appellant's order, five days after date, and dated January 2, 1841, for $800.

On the 22d of October, 1842, Stockton, the appellant, instituted in the District Court of Louisiana, for the parish of Carroll, an hypothecary action against the respondent, James C. Ford, and said Nicholas W. Ford, setting forth his purchase of said judgment, the recording thereof on the 2d of January, 1841, and that on the 12th of May, 1841, Nicholas W. Ford, one of said defendants, owned and had possession of a large tract of land and negroes in said parish, and that he had sold them to the respondent, and praying judgment against James C. Ford as the owner and possessor of said property, and that he pay the amount of said judgment and interest, or deliver up said mortgaged property to be sold to satisfy it.

On the 12th of December, 1842, James C. Ford appeared, and obtained an order to remove the cause into the Circuit Court of the United States for the Eastern District of Louisiana. Nicholas W. Ford resided out of the State of Louisiana, and did not appear.

On the 12th of February, 1844, the Circuit Court ordered the case to be put upon the chancery docket, and to be proceeded in as a chancery suit.

It is not necessary to trace the progress of the suit through an amended bill and second amended bill and answer and supplemental and then an amended answer, and changing the pleadings and motions for rehearings.

Numerous depositions were taken, and the cause came on for argument, when, on the 24th of January, 1848, the Circuit Court passed the following decree: —

"R. C. Stockton *v.* J. C. Ford.

"This cause came on to be heard upon the bill, answers, replications, and exhibits; the evidence being adduced, and argument of counsel heard, and the court having maturely considered the same, it is ordered, adjudged, and decreed, that the complainant's bill be dismissed, and the same is hereby dismissed, with costs."

Some further proceedings took place, but at last the decree was made absolute.

The complainant appealed to this court.

It was argued by *Mr. Volney E. Howard* and *Mr. Walker*, for the appellant, and *Mr. Bibb*, for the appellee.

The counsel for the appellant made the following points.

1. It cannot be doubted that the interest of a plaintiff in a

judgment may be seized and sold under execution by the laws of Louisiana. The public sale vests the title. La. Code, Art. 2586; 4 La. Rep. 118; 6 Ib. 543; La. Code of Practice, Art. 647, 690; 11 La. Rep. 125.

2. It was argued below, that the purchase of this judgment by Stockton was the acquisition of a litigious title. According to the Civil Code of Louisiana, article 2623, " A right is said to be litigious whenever there exists a suit and contestation on the same." In this case the right was not litigious, because there was no contest in relation to it. The contest was closed by the judgment. It is well settled in Louisiana, that the purchase of a judgment from which no appeal can be taken is not the acquisition of a litigious right, and may be made by an attorney. (Denton v. Wilcox, 2 La. Ann. Rep. 60; Troplong, Vente, Nos. 200–202.) It could not be appealed from after December, 1840. (Code Pr. 593; 12 La. Rep. 206.) Neither was the purchase of the judgment inconsistent with the trust relation of Stockton as plaintiff's attorney therein.

Mr. Pryor is the only person who can urge this objection. Whether Mr. Stockton would, as between him and Mr. Pryor, be permitted to retain the moneys collected upon the judgment for his own benefit, or whether he would hold them in trust for Pryor, does not affect the defendant. In either view, the plaintiff has an unquestionable legal title to the judgment, and an undeniable authority, at law and in equity, as against the judgment debtors and their property, to collect it, or to enforce its payment. Mr. Pryor takes no exception to the act of making the purchase, and knew of the seizure of the judgment. Painter v. Henderson, 7 Barr, 48, 50.

There does not appear to be any objection to the purchase of said judgment by the plaintiff, at the public sale made thereof by the sheriff. As attorney defending Mr. Pryor, his authority ceased with the judgment rendered in that action. It is settled that the power of the plaintiff's attorney after judgment extends only to the issuing of execution and receiving the debt, and that he cannot purchase land sold under an execution issued in the cause, as trustee for, nor for the benefit of, his client. The defendant's attorney is not charged with such duty. The seizure of the judgment by the sheriff took it from the control of the plaintiff, as the attorney for its collection on behalf of Mr. Pryor, and his power as attorney to defend Mr. Pryor, in the suit, expired when the judgment was rendered. The defendant is out of court by the judgment. The warrant of attorney is *quousque placitum terminatur;* and the defendant's *placitum* is determined by the judgment. Civil Code, Art. 2854 *et seq.,* Art. 2996; Coke's Second Inst. 378;

Macbeath *v.* Cooke, 1 Moore & Payne, 513, 514; S. C., 4 Bing. 578; Lusk *v.* Hastings, 1 Hill, (N. Y.) 656, 659; Tipping *v.* Johnson, 2 Bos. & Pul. 357; Jackson *v.* Bartlett, 8 Johns. 361; Kellogg *v.* Gilbert, 10 Johns. 220; Beardsley *v.* Root, 11 Johns. 464.

But if the powers of the plaintiff as attorney for Pryor were not determined by the judgment, there are no objections founded on public policy to a purchase by an attorney for the defendant, at a public judicial sale, after the judgment, of the property sold under the execution. As such attorney, it does not form any part of his duty to attend such sale. He has no control over it, which would tend to depress the price. His becoming a bidder with a view to buy must increase the competition in bidding, raise the price, and tend to make it produce the utmost of its value. The principle that purchases made under such circumstances are not obnoxious to objections on the grounds either of legality or propriety, has been repeatedly recognized. Jackson *v.* Woolsey, 11 Johns. 446, 456; Sheldon *v.* Sheldon's Executors, 13 Johns. 220, 223; Prevost *v.* Gratz, Peters's C. C. 364, 378; Campbell *v.* Walker, 5 Ves. 678, 680; Fisk *v.* Sarber, 6 Watts & Serg. 18.

No attempt has been made to prove any unfairness in the sale. It was made with all the formalities prescribed by law. The plaintiff was the highest bidder. The defendants in the judgment were notoriously and hopelessly insolvent, and the property of Nicholas W. Ford had been at all times industriously covered from all claims of his creditors. Nothing but eight years of active litigation has yet been realized from the purchase. The subject of the sale was a very undesirable object of purchase at any price, and no evidence was offered to show that it did not produce its utmost value at the time of sale.

4. If the objection taken by the answer, that the appellant could not acquire the judgment in question by purchase, except in trust for Pryor, be well grounded, the institution of this suit was in conformity with his duty as such trustee. If there were any irregularity in the purchase of the judgment by the plaintiff, the irregularity might be waived by the parties entitled to object to it, and the rights claimed by the plaintiff were confirmed by acquiescence and lapse of time. On a bill to enforce payment of such judgment, a court of equity would not look into such questions on the objection made by the debtor or his grantee, any more than they would into the question of the regularity of recovering such judgment. In the one case, the debtor is not the party affected by the alleged irregularity, nor who can raise the question; in the other, a court of equity

has not the power to determine it.    Baker *v.* Morgan, 2 Dow,
P. C. 526 ; Shottenkirk *v.* Wheeler, 3 Johns. Ch. 275, 280 ;
De Riemer *v.* De Cantillon, 4 Ib. 85, 93 ; Painter *v.* Hender-
son, 7 Barr, 48, 50 ; Fairbanks *v.* Blackington, 9 Pick. 93.

5.  The objections, that, at the time of the purchase of the
judgment of Pryor against N. & E. Ford & Co. by the plaintiff,
the right thereto had passed from William B. Pryor to Jones,
and that the defendant is the owner of the judgment under the
transfer executed by Jones to him, set forth in the original an-
swer, and in the supplemental and amended answer, were dis-
posed of in this record by the amended bill, filed by the plain-
tiff, by leave of the court, on the 14th of May, 1845, and by
the order, taking the allegations of said amended bill as con-
fessed by the defendant, on the 23d of December, 1845.    That
bill expressly alleges, first, that at the time of the pretended re-
lease of February 17, 1842, the said judgment was the proper-
ty of Pryor, and was then under seizure by process of attach-
ment against him, and had been under said seizure from the
15th of January, 1842.    Secondly, that said release was fraud-
ulently and illegally made by the order of one Joseph Jones,
by the procurement of the defendant, and without any authori-
ty in said Jones so to do.    Thirdly, that Jones did not then
have, and never at any time did have, or hold and own, said
judgment.   Fourthly, that Jones is a citizen of Mississippi, out
of the jurisdiction of the court, and could not be made a party
to the suit.   And fifthly, that the mortgage resulting from said
judgment was and has been in no degree released or weak-
ened by the said entry purporting to be a release thereof, but
still rests upon and binds all said property in the hands of the
defendant.

(The other points made by the counsel for the appellant are
omitted.)

Points for the appellee (1st point omitted).

There is, however, another view of the subject, which shows
that the plaintiff is not the assignee of this judgment of Wil-
liam B. Pryor against N. & E. Ford & Co.    William B.
Pryor, on the 12th of March, 1840, assigned this very judgment
to Dr. Joseph Jones, and that assignment was read.    Pryor
was discharged in bankruptcy ; his deposition was taken.   He
proves that he had assigned this judgment to Dr. Jones, and
that Stockton was his attorney in obtaining that judgment ;
and that Stockton was at the time of the levy and sale the at-
torney to collect that judgment ; and that Stockton had notice
of the assignment to Dr. Jones before his purchase.

Dr. Jones was called as a witness, and he proves that Wil-

liam B. Pryor assigned to him his judgment in the Commercial Court of New Orleans against N. & E. Ford & Co. He identifies the bill of exchange on which the judgment was obtained, as the same on which the Planter's Bank of Mississippi obtained a judgment against Pryor. That record is produced, and it shows that it was for the very bill that Pryor sued N. & E. Ford & Co., the whole of both records being before the court; that Stockton was the lawyer to collect the judgment, and that he caused the assignment from Pryor to him to be filed in the record; that Stockton had full notice of it. He further testifies, that Stockton never notified him of any proceedings to attach or sell this judgment.

C. M. Jones, attorney for J. C. Ford, in his exception, filed immediately on the removal of the cause to the United States Circuit Court, found that the assignment from Pryor to Jones had been filed in court by Stockton, and he formally excepted to Stockton's being assignee, because of that assignment filed by Stockton.

There is, however, another argument, altogether independent of the foregoing, to show that a court of equity cannot hesitate to refuse to recognize Stockton as the purchaser of this judgment of Pryor against N. & E. Ford & Co., and to give him relief on his pretended assignment thereof.

1st. Stockton was the attorney of Pryor in obtaining this judgment for upwards of $8,000, and he was notified of the assignment thereof to Jones, and he was continued as the attorney.

2d. After that assignment, he brought a new suit on the original cause of action, and signed his name to the petition. It was defeated by a plea of *res judicata*, and that the bill was merged in the judgment upon it. This was on the 22d of December, 1840. The assignment to Jones was on the 12th of March, 1840. He was then proceeding for the benefit of the assignee Jones, and not for Pryor.

3d. Standing in this fiduciary relation to Pryor and to Jones, his assignee, when Way & Bainbridge sue out their attachment to sacrifice the interests of his non-resident client, this same R. C. Stockton voluntarily appears in the name of Pryor and files his answer, without notifying Jones or Pryor of the proceeding; and he then, as the attorney of Pryor, accepts service of the notice of judgment. He facilitates the obtaining of a judgment against his client. After judgment, by the practice in Louisiana, the defendant must be notified of a judgment before execution can issue.

4th. Under an execution thus procured, and for the inadequate price of $300, he claims to have become the purchaser

of his client's judgment for $ 8,000 or $ 10,000. Can such a proceeding be tolerated by a court of equity? Does he come into equity with clean hands? Will a court of equity look " complacently on such speculations by the officers of a court in the subjects of litigation"?

But this is not all that this record exhibits, to show that Stockton cannot be allowed to maintain this suit, and to stand in judgment as the assignee of this judgment.

By the record of Way & Bainbridge's suit, it would appear that Robert Mott was the attorney employed by Way & Bainbridge to institute and prosecute their suit. His name is signed to the petition. And it would therefore seem that there were contradictory proceedings. It happens, however, that Edmund T. Bainbridge's deposition was taken; and he, one of the plaintiffs in 1845, testified that R. C. Stockton was the lawyer employed to prosecute the suit of Way & Bainbridge, and had corresponded with Way & Bainbridge as their attorney, and that Way & Bainbridge had never got one cent from their judgment against Pryor. And William Prather, the attorney in fact of Way & Bainbridge, and who was one of the assignors to Way & Bainbridge, testifies that Stockton was the attorney of Way & Bainbridge, and the only attorney with whom the assignee of Way & Bainbridge had any correspondence on the subject of that suit.

This complainant is then asking a court of equity to substitute him to the right of Pryor on a judgment for some $ 10,000 against N. & E. Ford & Co.; and the evidence of that right is, that he, as an attorney and counsellor at law, obtained that judgment for Pryor; that Pryor assigned that judgment to Jones, with his knowledge, and that the trust and confidence in him, as an attorney, was continued in him by Jones; that, after all this, he accepted an employment from Way & Bainbridge to attack the very rights which it was his duty to defend; and that, supposing it would not look well on the record to appear for both plaintiff and defendant, he obtains the use of Mr. Mott's name to the petition of Way & Bainbridge, and he makes a feigned defence for Pryor, with full knowledge that Pryor had assigned the debt. After Pryor's *discharge* in bankruptcy, he appears and lets a judgment go against him, without notice to either Pryor or Jones, and then, by force of these proceedings, he claims to be himself the owner of this $ 10,000 judgment, and his clients, Way & Bainbridge, have never got a cent.

Surely, surely it cannot be necessary to argue seriously before the highest court of the nation any further propositions presented by this record. I cannot hesitate to believe, with

21

confidence, that no enlightened court in Christendom would give their sanction to such proceedings, so far as to subrogate this plaintiff to the rights of Pryor or Jones, or Way & Bainbridge, upon such evidence. And if the case were my own, I should not be disposed to trouble the court one moment longer; perhaps, however, it is my duty to the defendant to notice other points.

The court will observe that N. & E. Ford & Co. failed in 1837 – 38, and became hopelessly insolvent. This is proven clearly by plaintiff. I am not certain whether it appears, but I believe it does, that some, if not all of them, were discharged as bankrupts. The only chance to make any thing out of this judgment was by this suit against J. C. Ford. The Code of Louisiana, art. 3522, § 22, defines a litigious right to be "one which cannot be exercised without undergoing a lawsuit." And by art. 2622, he against whom a litigious right has been transferred may get himself released by paying to the transferee the real price of the transfer, together with interest from its date." I submit the question under these articles, whether the plaintiff could possibly recover more than $ 300, with interest, if he had been a stranger to all these records.

Under the title "Compulsory Transfer of Property," the Code, art. 2606, says: "In all cases a fair price should be given to the owner for the thing of which he is dispossessed." Moreover, Stockton was a mandatory, and could not purchase the thing submitted to his charge as a mandatory.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States held in and for the District of Louisiana.

The action was commenced in a District Court of the State, and was removed by the defendant to the Circuit Court of the United States, under the twelfth section of the Judiciary Act of 1789.

James C. Ford, the defendant, being the owner of a plantation and slaves in the parish of Carroll, State of Louisiana, on the 11th of March, 1835, sold and transferred the same to Nicholas W. Ford, of Louisville, Kentucky, for the consideration of $ 80,000 the payment of which was secured by a mortgage upon the property sold. A subsequent mortgage was also given by N. W. Ford and wife, dated the 10th of June, 1837, to the defendant, to secure him against several heavy liabilities he was under for him, and in which mortgage was included some $ 32,000 of the original purchase-money then remaining unpaid.

On the 26th of November, 1839, N. W. Ford sold and transferred all his interest and estate in the plantation and slaves to William Ford, Jr., for the consideration of $ 116,207.41, to secure the payment of which, the property sold was mortgaged by the vendee.

On the 12th of May, 1841, William Ford, Jr., resold and conveyed back to Nicholas W. Ford the plantation and slaves, for the same consideration which he had agreed to pay for' them, and which was paid by delivering up and cancelling the securities given at the original purchase.

And on the same 12th of May, 1841, Nicholas sold and transferred the plantation and slaves back to the defendant, from whom he had originally purchased them, for a large consideration, made up of a balance remaining due upon the first mortgage and liabilities he was under for Nicholas, and the payment of which he had assumed.

The interest and estate of the defendant in this plantation and slaves, under the title thus derived, are involved in the result of this suit. I have not gone into the particular facts and circumstances attending these several sales and transfers of the property, as the view we have taken of the case, and upon which we shall place our decision, renders it unnecessary to a proper understanding of the question.

The claim of Stockton, the plaintiff, is as follows.

On the 3d of December, 1839, one William B. Pryor recovered a judgment in the Commercial Court of New Orleans against N. & E. Ford & Co., of which Nicholas W. Ford was a member, for $ 7,442.74, with interest at five per cent. from the 4th of December, 1837, and costs.

On the 2d of January, 1841, this judgment was filed and recorded in the office of the registry of mortgages, and became a lien on the real estate and other immovable property of Nicholas W. Ford. And on the 7th of February, 1842, the firm of Way & Bainbridge recovered a judgment against William B. Pryor for $ 718.12, with five per cent. interest from the 22d of April, 1837, and costs. An execution upon this judgment against Pryor was issued to the sheriff on the 26th of February, 1842, who seized all his interest in the judgment he had recovered against N. W. Ford; and, on the 17th of March following, in pursuance of such seizure, and after public notice according to law, sold the said judgment to Stockton, the plaintiff in this suit, for $ 300, he being the highest bidder; and on the 19th of April conveyed the same to him by deed.

The suit before us was instituted by the plaintiff, under a title thus derived to this judicial mortgage, for the purpose of foreclosing the same, and calling upon James C. Ford, the

defendant, to pay the amount of the judgment, principal and interest, or that a sale of the mortgaged premises be ordered.

It will be seen from the foregoing statement that the sale and transfer of the plantation and slaves in question by N. W. Ford to William Ford, Jr. took place on the 26th of November, 1839, and the judgment of Prior against him was filed with the recorder of mortgages on the 2d of January, 1841, although recovered on the 3d of December, 1839, some seven days after the above conveyance.

It further appears, also, that on the 12th of May, 1841, William Ford, Jr. resold and transferred the property to N. W. Ford, who, on the same day, conveyed it to the defendant.

The plaintiff insists, therefore, that this judicial mortgage of Pryor against N. W. Ford, to which he had derived title under the sheriff's sale, became a lien upon the property ;— 1st. On the ground that the conveyance of the 26th of November, 1839, was made in fraud of the rights of judgment creditors; but, if not, 2d. That it became a lien from the time of the reconveyance to N. W. Ford, on the 12th of May, 1841, as he then became reinvested with the title.

The view we have taken of the case renders it unimportant to enter upon an examination of either of these questions; and we shall assume that the judgment was a lien upon the interest of N. W. Ford upon one or the other of the grounds above stated.

On the 12th of March, 1840, William B. Pryor assigned this judgment against N. W. Ford to Dr. Jones, to secure him for responsibilities he had assumed for the former, he agreeing to pay over the balance, if any remained after satisfying them. Dr. Jones is a witness in the case, and testifies that the judgment was assigned to him by Pryor as an indemnity for large sums of money which he had paid and was liable to pay for him as surety ; and that he had paid for him demands exceeding the amount of the said judgment for which he had no other satisfaction or security. That Pryor took the benefit of the bankrupt act of 1841. That soon after the assignment of the judgment to him he placed on file in the office where the judgment was entered notice of the said assignment; and that the plaintiff had full knowledge of the fact.

These facts are confirmed by the testimony of Pryor, who is also a witness in the case.

The suit was not commenced by Way & Bainbridge against Pryor until the 15th of January, 1842, nearly two years after this assignment of judgment of Pryor against N. W. Ford to Jones. The assignment, as we have seen, was made upon full consideration, without any concealment, or, for aught that ap-

pears, intent to hinder or delay creditors; and was well known to the plaintiff long before he became the purchaser at the sheriff's sale. It passed the legal interest in the judicial mortgage out of Pryor, and vested it in Jones, as early as the 12th of March, 1840; and we are wholly unable to perceive any ground of equity in the plaintiff, or those under whom he holds, for disturbing it through a judgment against the assignor rendered nearly two years afterwards.

The sheriff's sale, therefore, could not operate to pass any interest in it to the plaintiff.

After the parties had proceeded to issue upon the pleadings, the plaintiff applied and obtained leave to withdraw the replication and amend his bill; and in that amendment he set forth, that on the 17th of February, 1842, the recorder of mortgages had entered on the mortgage book in his office a satisfaction and discharge of the judicial mortgage, which at that date was the property of Pryor; that afterwards it had become the property of the plaintiff by virtue of the sheriff's sale and conveyance; and charges, that the entry of satisfaction was illegal and void, as the judgment was then under seizure by the process of attachment in the suit of Way & Bainbridge against Pryor; that Pryor had no right to release the judgment; that he never received payment or satisfaction of the same; and that the discharge of record was fraudulently procured by Jones at the request of James C. Ford, the defendant; and that Jones had no interest or property in the same.

No answer was put in to this amendment, and the allegations were taken as confessed by the defendant.

This branch of the case has occasioned some embarrassment; and it is not readily perceived why the solicitor for the defendant should have omitted to put in the proper answer to the allegations, or have allowed them to be entered as confessed.

It will be seen, however, that the object of the amendment was to get rid of the entry of satisfaction of the judicial mortgage of record, which had been entered by the recorder of mortgages in due form; and which, while it remained, afforded a complete answer to the title set up by the plaintiff under the sheriff's sale; but which, of itself, was not essential, as it respected the ground of defence set up by the defendant. That rested upon the assignment from Pryor to Jones of the 12th of March, 1840. There is no charge made in the amendment of fraud in this assignment, nor any impeachment of its validity, except as may be inferred from the allegation that Jones was not the owner of the judgment, which is stated by way of showing that he possessed no authority at the time to cause the satisfaction to be entered.

21 *

The defendant had set up in his first and supplemental answers, expressly, as one of the grounds of his defence, this assignment of the judgment from Pryor to Jones, and from Jones to himself; and that the plaintiff had full knowledge of the same. The fact, therefore, was at issue on the bill, answers, and replication; and, unless it had been directly impeached in the amended bill, no further answer was necessary to enable the defendant to maintain it by the proofs.

This being the state of the pleadings at the time of the amendment of the bill, the admission that the entry of satisfaction of the judgment by the recorder of record was made without authority, and void, did not materially affect the ground and posture of the defence. For while the pleadings were such as enabled the defendant to maintain the force and validity of the assignment by the proofs, he was in a situation to defend himself against the claim of the plaintiff, independently of the question in respect to the entry of satisfaction.

If the amended bill had charged that the assignment had been made in fraud of the rights of creditors, and the charge had been taken as confessed for want of an answer, the question would have been very different. But there is no such allegation.

Indeed, it is somewhat remarkable, that neither in the original bill, nor in the amendments (for there were two amendments), is there to be found a charge impeaching the good faith or validity of this assignment, although its existence was well known to the plaintiff; and while it remained, it was fatal to his deduction of title under the sheriff's sale.

In any view, therefore, that can be properly taken of the case, the plaintiff has shown no right or interest in the judicial mortgage which he seeks to enforce against the plantation and slaves in question. The whole interest had passed to the defendant.

There is another ground of defence set up in the pleadings, and supported by the proofs, which has not been satisfactorily answered. And that is, that the plaintiff was the attorney of Pryor in the judgment against N. W. Ford, employed to enforce its collection; and while holding this relation to him, and after the assignment of Jones to the latter, he became the purchaser in his own name, without communicating the fact to his client, and obtaining his consent. Holding this relation to Jones at the time of the purchase, it was his duty to have advised him of the seizure and sale, so as to have enabled him to prevent a sacrifice of the judgment on the sale; and having not only neglected to do this, but having purchased the judg-

ment himself, a court of equity will fasten upon the purchase a trust for the benefit of the client.

The defendant, therefore, standing in the place of Jones, would, upon clear principles of equity, have a right to demand of the plaintiff the title acquired at the sheriff's sale to the judicial mortgage, on paying the purchase-money. And if the purchase was made in bad faith, and with the intent to speculate at the expense of the rights and interests of the client, using the knowledge derived from that relation for this purpose, the remedy might not be too strong even to set aside the sale, and relieve the property from the encumbrance without the terms mentioned.

It is true, this is not the case of an attorney purchasing property under an execution which he has issued on a judgment, the usual case in which a court of equity has interfered, and declared the purchase to have been made in trust for the client. But the principle is the same. He had the charge of the judgment, and was intrusted with the management of it for the purpose of collection; and can be allowed to do no act in the absence of the client, and without his consent concerning it, by which he may derive an advantage at the expense of the client.

Instead of the judgment, suppose the plaintiff had the charge and management of a plantation and slaves for his client, and an execution should come against them under which they were seized and sold; can it be doubted, if purchased in by the attorney in the absence of the client, and without his consent, that he could not hold the property discharged of' the trust growing out of the relation existing between the parties? We suppose not. A court of equity, from the mere fact of such relation, would fasten upon the purchase a trust, without any inquiry into the motives or intentions of the attorney in making the purchase, and compel him to give up its benefits and advantages on the reimbursement of the purchase-money. Neither fraud nor imposition need be shown. The client may, at his election, treat the act as done for his benefit.

There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.

But it is unnecessary to pursue this branch of the case, or to

place our decision upon it, as the ground already taken, and stated more at large, affords a full and conclusive answer to the claim set up by the plaintiff.

The decree of the court below is affirmed.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.