## ORR et al. v. WALDORF–ASTORIA HOTEL CO.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1923. Rehearing Denied August 3, 1923.)

No. 6038.

1. Attorney and client ⬦110—Obligations of attorney undertaking collection of notes specified.

Attorneys undertaking collection of note were bound to exercise reasonable care, skill, and diligence, and put forth all reasonable and proper effort to collect the money, advise their client of the situation and steps necessary to be taken, and utilize the procedure and processes generally known to the profession.

2. Attorney and client ⬦106—Relation is one of confidence, and full disclosure is required.

The relation of attorney and client is one of trust and confidence, and the law demands prompt and full disclosure of all facts which affect the duties and rights of either.

3. Attorney and client ⬦110—Attorneys held liable for neglect of duty in attempting to collect note.

Attorneys receiving note for collection, but failing to fasten lien on debtor's interest in land until time for redemption from mortgage foreclosure had expired, or to have second writ of garnishment issued on alias execution, though knowing mineral royalties were due the debtor, but instead, without the client's knowledge, redeeming the land themselves under judgment owned by them, and attempting to collect the royalties for themselves, *held* guilty of neglect of duty.

4. Attorney and client ⬦110—Attorneys neglecting to collect judgment cannot defend on ground that client could collect from indorser.

Where attorneys, employed to collect note and obtaining judgment against the maker, which could have been collected in the exercise

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of reasonable, care and skill, neglected their duty, and it became uncollectible, they cannot defend on ground that client could collect the note from an indorser.

5. Trial ⬅⟹177—When both parties move for directed verdict, defendants held not entitled to go to jury, when their motion was overruled.

Where both parties moved for instructed verdict, and defendants' motion contained nothing other than reasons why it should be sustained, there was no reservation of their right to go to the jury if the motion was overruled.

Pollock, District Judge, dissenting.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by the Waldorf-Astoria Hotel Company against Charles N. Orr and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Charles S. Kidder, of St. Paul, Minn., for plaintiffs in error.

George H. Sullivan, of Stillwater, Minn. (William Furst, of Minneapolis, Minn., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and POLLOCK and SYMES, District Judges.

LEWIS, Circuit Judge. [1, 2] Plaintiffs in error, lawyers practicing their profession at St. Paul under the firm name of Orr, Stark & Collett, in June, 1911, for an agreed consideration undertook the collection of a $6,500.00 note given by Wm. Sauntry of Minnesota, which had been endorsed and transferred for value by the payee to Waldorf-Astoria, a New York corporation. The arrangement was made through correspondence with New York counsel for Waldorf-Astoria. There can be no doubt as to the measure of duty assumed by the St. Paul firm. The law is plain. They were bound to exercise reasonable care, skill and diligence in the performance of the services undertaken, to put forth all reasonable and proper effort to collect the money, to advise their client of the situation and the steps necessary to be taken for its protection, and to utilize for that purpose the procedure and processes generally known to the profession. The relation is one of trust and confidence, and the law demands prompt and full disclosure of all facts which affect the duties and rights of either. Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621; Baker v. Humphrey, 101 U. S. 494, 25 L. Ed. 1065; Stockton v. Ford, 11 How. 232, 13 L. Ed. 676; Trice v. Comstock, 121 Fed. 620, 57 C. C. A. 646, 61 L. R. A. 176; Charles v. Roxana Corp. (C. C. A.) 282 Fed. 983; Mechem on Agency; 6 C. J. 682; 3 A. & E. Enc. of Law (2d Ed.) 379.

[3] Plaintiffs in error advised Waldorf-Astoria through letters to New York counsel early in 1911 that Sauntry was insolvent, that he still had some cut-over timber lands and mining property, that they had had a great deal of experience with him and had collected considerable money from him, that judgment should be taken on the note and Sauntry brought up on supplementary proceedings to find out just what he had, and that payment was doubtful. On November 2, 1911,

⬅⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

judgment on the note for $6,900.00 was entered in the State district court at St. Paul on Sauntry's confession. Execution issued at once and writ of garnishment was served on Bennett & Longyear, a financially responsible firm of Minneapolis, who made return early in November that they were not indebted to Sauntry and had no money or property in their possession belonging to him. Thereupon plaintiffs in error directed the sheriff to return the execution unsatisfied. As a matter of fact Bennett & Longyear were at that time indebted to Sauntry in the sum of $10,000 for accrued and past-due royalties under a mining lease which they held as lessees on 40 acres of land in northern Minnesota in which Sauntry had a half-interest. The lease was given in 1907 by Sauntry and his cotenant, the lessees agreeing to pay Sauntry a royalty of not less than $10,000.00 per annum for the first four years and $15,000.00 per annum thereafter. But Sauntry had given a mortgage on his interest in the 40 acres securing an indebtedness of $30,000.00, and as further security he pledged the royalties to accrue. This accounts for the kind of return made by the garnishees. Of the accumulated royalties in the hands of Bennett & Longyear $2,500.00 was paid to a bank on consent of mortgagee and at the request of Sauntry, the remaining $7,500.00 was held by them until paid into court some three and a half years later, in a suit brought by plaintiffs in error in their own interest. This action, brought by the Waldorf-Astoria against the plaintiffs in error, is for the recovery of damages on account of their failure to collect its judgment by application of the $7,500.00 to its payment, and also for their failure to procure its payment out of Sauntry's equity in the 40 acres. The trial court held that plaintiffs in error had failed in the discharge of their duty to Waldorf-Astoria in not procuring the payment of its judgment out of the $7,-500.00 when, by the exercise of reasonable diligence, that could have been done, but further held there was no showing of neglect of duty as to the other ground. There was an instructed verdict in favor of Waldorf-Astoria, for the reason stated, and from judgment thereon defendants have brought the case here.

These facts are undisputed: The $30,000.00 mortgage given by Sauntry on his undivided half-interest in the 40 acres was foreclosed and foreclosure sale had on September 20, 1910. Under the Minnesota statute the mortgagor and all lien-holders were given one year in which to redeem, exercising that right if they desired to do so in the order of their priorities. The year expired September 20, 1911, a month and a half before the entry of the Waldorf-Astoria judgment. Before the year expired the plaintiffs in error had obtained judgments for other creditors of Sauntry, one for $741.38 in favor of Hunt & Co., which they bought for $275.00 in January, 1911, and had it assigned to themselves. See Hunt v. Orr, 246 Fed. 252. They knew in January, 1911, that there had been foreclosure of the mortgage. In 1910 they had secured an abstract of the title to the 40 acres and a copy of the lease to Bennett & Longyear. In 1910 they had written a letter in which they stated they thought the 40 acres was worth $100,000.00, and one of them later testified that it was worth from $200,000.00 to $300,000.-00. They knew as early as 1910 that the minimum royalty payable

to Sauntry was $10,000.00 a year, and after January 1, 1911, $15,-000.00 a year. They had a copy of the mortgage. A short while before the period of redemption expired William and Lyman Sutton, Sauntry's nephews, evidently acting in their uncle's behalf, furnished the funds to one Torinus with which he purchased from the mortgagee, who had bid in the property at foreclosure sale, the sheriff's certificate of sale, and had the certificate assigned to Torinus. They also secured funds with which Torinus bought the largest judgment placed in line for redemption. On September 20, 1911, at 5:19 p. m., plaintiffs in error docketed in the proper records of the county in which the 40 acres is situate the Hunt judgment and its assignment to them, for the obvious purpose of being last in right of redemption. After preceding judgment-lien creditors who desired to exercise their rights of redemption had done so, then plaintiffs in error redeemed under the Hunt judgment. In order to redeem they got one Spratt to advance the necessary amount, about $46,000.00, for which they agreed to give him an interest in the property. On September 20, 1911, Sauntry gave William Sutton a mortgage on the half-interest to secure Sauntry's note for $50.00, and that mortgage was filed for record late in the evening of September 20th, after the Hunt judgment was docketed. Thereupon William Sutton undertook to redeem from plaintiffs in error. The latter resisted his right to do so. They and Spratt instituted a suit on October 16, 1911, against Sauntry, Torinus, William and Lyman Sutton and Bennett & Longyear, to obtain a judgment denying to Sutton the right of redemption, sustaining their redemption and to quiet their title to a half-interest in the 40 acres. In that suit it was finally adjudged on October 9, 1914, by the Supreme Court of Minnesota that Sutton had no right to redeem, on the ground that when he filed his $50.00 mortgage he failed to pay the 25 cent registry tax therefor. See Orr v. Sutton, 119 Minn. 193, 137 N. W. 973, 42 L. R. A. (N. S.) 146; Id., 127 Minn. 37, 148 N. W. 1066, Ann. Cas. 1916C, 527. Plaintiffs in error and Spratt then sued Bennett & Longyear for the unpaid royalties, including the $7,500.00 which was due at the time they were garnisheed in November, 1911, in the Waldorf-Astoria suit. Bennett & Longyear admitted that they owed $58,750.00 in accumulated royalties, and on their request they were permitted to pay it into court and were dismissed; but Sauntry had died on November 10, 1914, and his administrator intervened and claimed the $7,500.00 because it had accrued during the year of redemption and belonged to Sauntry, and it was awarded to him on that ground. Had it not been for the death of Sauntry the plaintiffs in error and Spratt would have recovered it. Sauntry's estate is insolvent. The mortgagee never made any claim to any part of the accumulated royalties, and we think it apparent from the amount raised by the Suttons to purchase the certificate of sale held by the mortgagee, and also from the amount furnished by plaintiffs in error to perfect their redemption, 127 Minn. 37, 148 N. W. 1067, Ann. Cas. 1916C, 527, that the mortgagee's claim was paid in full, and that this was known to plaintiffs in error as early as September 20, 1911, and that thereafter from that day until Sauntry's death on November 10, 1914, the $7,500.00 in the hands of Ben-

nett & Longyear could have been obtained and applied in satisfaction of the Waldorf-Astoria judgment by writ of garnishment served on them under an alias execution. No reason has been assigned by plaintiffs in error why they did not resort to that simple procedure in behalf of the Waldorf-Astoria. That its omission was·a lack of diligence and good faith to their client is too plain for argument. The only explanation which we can conceive is, that they had decided to get it for themselves. But this is not the only respect in which they neglected their client. On November 1, 1911, with full knowledge of the situation, they wrote to counsel in New York this remarkable letter:

"Nov. 1, 1911.

"Chas. J. Campbell, Esq., New York Life Bldg., New York City—Dear Sir:—In re Astoria Hotel Co. vs. Wm. Sauntry. As we advised you some time ago, we are in position to enter judgment in the above matter tomorrow, but from the best information which we can obtain at this time, Sauntry is absolutely insolvent. Some time ago he was the owner of an undivided interest in an iron mine worth considerable money. He gave a mortgage on the property for $30,000.00 which mortgage was foreclosed. His year of redemption expired in September and he did not redeem but certain people who we believe are friendly to Sauntry did redeem and presumably he has an interest but it is an interest that you could never show. One person close to the deal advised us that they simply told Sauntry that they, the redemptioners, would take care of him for the rest of his life but he retained no legal claim or could we prove any claim that would even cloud the title.

"An action has been commenced to clear the title to this property and we have been advised that there is some six or seven thousand dollars due from the mining lease that was on the property but the person to whom it is due is uncertain. It was probably either Sauntry or the mortgagees.

"If we are to try to follow up this money, it will be probably necessary to intervene in the suit and as that action is a complicated one, it will certainly go to the Supreme Court and probably more than once. As we stated before, we are told that Sauntry is insolvent and if clients wish, we are willing to go after this money providing they will allow us an adequate contingent fee. We should say that 33⅓ per cent., one-third to you, would be about right.

If we undertake this you can assure clients that there is no need asking for frequent reports because it will doubtless take more than a year to clear up this litigation and there will be nothing to report until the matter is finally determined. We have had other executions against Sauntry recently return unsatisfied and this is the only hope of ever realizing anything on the matter.

"Kindly let us hear from you at your convenience, and oblige.
"Yours truly, Orr, Stark & Collett."

Remarkable, in that it shows that plaintiffs in error were then advised that several thousand dollars in accumulated royalties was past due; remarkable, also, in that it fails to disclose that the plaintiffs in error themselves had in their own behalf and for their own private interest commenced action to clear the title to Sauntry's mining property; remarkable, again, in that it sounds discouragement and warning to the Waldorf-Astoria not to try to follow up the money in the hands of the lessees by intervention in a complicated suit for that purpose, which would certainly be long-drawn out; and remarkable, further, in that it expresses a clear intent to lull their client into inaction. This cannot be explained, except on the theory that plaintiffs in error then had in mind obtaining all of Sauntry's property, including the $7,500.

00, for themselves. Waldorf-Astoria and New York counsel did not know that such a suit had been instituted. They were never advised of its progress, nor the results, nor that plaintiffs in error had themselves acquired Sauntry's interest in the 40 acres. As late as January 20, 1917, they wrote New York counsel this:

"On September 20, 1910, a mortgage of $30,000.00 was foreclosed on William Sauntry's mining property in the northern part of the state and the period of redemption expired September 1911. After we entered judgment on your claim we levied upon the lessees of this property, thinking we might catch some of the royalties which would be due William Sauntry during the year for redemption. But the lessees disclosed that they owed William Sauntry nothing.

"William Sauntry died in December 1914 and we filed your client's claim with the Probate Court. No inventory has yet been filed and it would appear that no assets have yet come to light except the homestead, which of course is exempt.

"We do know, however, as a matter of fact, that he had some mineral rights in the northern part of the state."

But neither in that letter nor in any other way did they ever advise their client of the true facts or that they had acquired any of Sauntry's property and how they got it. The Waldorf-Astoria later learned that through other sources. They have made large profits out of their speculation, far in excess of what was required to pay the Waldorf-Astoria judgment. The acts of the two Suttons bear every earmark of an attempt to hold a half-interest in the 40 acres for the use and benefit of their uncle. If that were so, and they had been permitted to redeem, equity would have applied that interest, though covered up in the name of Sutton, to the benefit of Sauntry's creditors. The Suttons wanted to get the Hunt judgment out of the way, and in behalf of Sauntry tendered its full amount in gold to plaintiffs in error before they had perfected their redemption. They declined the tender. In Stockton v. Ford, supra, it is said:

"It is true, this is not the case of an attorney purchasing property under an execution which he has issued on a judgment, the usual case in which a court of equity has interfered, and declared the purchase to have been made in trust for the client. But the principle is the same. He had the charge of the judgment, and was intrusted with the management of it for the purpose of collection; and can be allowed to do no act in the absence of the client, and without his consent concerning it, by which he can derive an advantage at the expense of the client."

It seems to us that they neglected their duty to their client in another way. They did not take the simple and inexpensive precaution of fastening a lien on Sauntry's interest in the 40 acres prior to September 20, 1911, in favor of their client, and thus putting it in line for redemption by filing for it a creditor's bill, either solely in the name of Waldorf-Astoria or joining it with themselves as plaintiffs, assignees of the Hunt judgment. If this had been done it is more than probable, in view of the anxious concern of the Suttons, that the lien would have been satisfied and the claim of Waldorf-Astoria thus paid. But the simplest method by which, if they had adopted it, they could have undoubtedly secured payment of the judgment was to have issued another writ of garnishment against Bennett & Longyear on an alias execution

at any time during the three years just prior to Sauntry's death. During all that time they were fully advised of the facts. The mortgage debt had been paid. No one had acquired any right as against Sauntry to that fund in the hands of Bennett & Longyear, and with full knowledge of the situation they preferred to neglect their client and attempt to recover the $7,500.00 for themselves.

[4] It is said that even conceding a neglect of duty, still there can be no recovery in a case like this, unless the Waldorf-Astoria shows that it has been damaged; and it is argued that there is no evidence that the payee and indorser of the note is insolvent, and that if he be solvent it can be collected from him. But the judgment in its favor established that Sauntry was indebted to it, and it had a right to have that judgment collected. Plaintiffs in error were employed to collect it, if in the exercise of reasonable care and skill they could do so, and it is not for them to say that their client might collect the debt from someone else. After plaintiffs in error neglected the opportunity to collect, above-noted, no chance of ever realizing anything on that judgment was left. The damage to defendant in error was the result of their neglect. A collectible judgment became valueless.

[5] At the close of the trial both sides moved for an instructed verdict. Plaintiffs in error now say that under the rule laid down in Williams v. Vreeland, 250 U. S. 295, 39 Sup. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038, Sena v. Am. Turquoise Co., 220 U. S. 497, 31 Sup. Ct. 488, 55 L. Ed. 559, Empire Cattle Co. v. Atchison, 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70, and Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654, their motion reserved the right to go to the jury if it should be overruled, that it was not a final submission of the cause on their part. We cannot assent to this. Their motion was put in writing. It embodies stated reasons why it should be sustained, and that part of it entitled, "Motion to Take from Jury," and "Objection," contains nothing more than additional reasons in support of the motion. Moreover, we are of opinion that if the case had been submitted to the jury and they had found in favor of plaintiffs in error, it would have been the duty of the court to set the verdict aside. The undisputed facts required, in our judgment, that the court should have directed of its own motion the verdict that was returned.

Judgment affirmed.

POLLOCK, District Judge (dissenting). I regret my inability to concur in the opinion of my associates in this case. My reason for not so doing is this:

To my mind, a fundamental error pervades this entire record. That the judgment for damages directed by the court against defendants in this case is not supported by the pleadings and is utterly lacking in evidence in its support. Conceding there is found in the record an abundance of evidence to go to the jury on the question of defendants' negligence in the conduct of the litigation complained of, yet on this record, to my mind, the judgment must be decreed erroneous as a

matter of law, and for the soundest reasons and on fundamental principles, and for the following reasons.

First, conceding there was an abundance of evidence of negligence, which is done, to have required a jury in finding by their verdict such negligence, yet this is an action at law to recover damages for the loss sustained by the plaintiff by reason of the failure of defendants through negligence to have collected the judgment taken in the name of the plaintiff in this case. It is in no sense an action on the promissory note set up in the pleadings or to recover the contents of that note. Now, in taking the case from the jury the court not only finds defendants guilty of negligence as a matter of law, but assesses damages against defendants for the loss sustained by the plaintiff for the full amount of the note merged in judgment thereon without any pleading in its support and without a syllable of evidence to sustain such directed verdict and judgment.

To uphold such verdict and judgment on the ground of negligence on which the plaintiff has founded its action in this case the burden is upon plaintiff to plead and prove by the preponderance of the evidence the full amount of the judgment entered on the promissory note is the measure of loss it has sustained. However, when we come to look at the record we find the plaintiff has neither so pleaded nor proven in this case. The petition charges the promissory note of Sauntry to Mayhem was indorsed by Mayhem to plaintiff and not having been paid by the maker, Sauntry, at maturity, but dishonored, it was by plaintiff duly protested in order to hold Mayhem liable as indorser thereon. Now, there is neither an allegation in the petition nor a syllable of evidence in the record as to the financial ability of Mayhem, the indorser, to pay the note or that he has not or will not pay the same on demand. In other words, so far as the petition discloses the plaintiff had two debtors, Sauntry, the maker of the note, and Mayhem, the indorser thereon, both liable to plaintiff, yet, by simply alleging and proving one of these debtors to plaintiff has not been compelled by defendants to make payment of the note, and without any pleading or showing of the inability or unwillingness of the other debtor to pay plaintiff, that the entire debt has been lost to it. Therefore it demands and has been awarded a judgment against defendants that the entire amount of the note merged in the judgment against the maker Sauntry alone has been entirely lost, and, further, that the amount of this note measures the extent of the loss plaintiff has sustained.

However, to my mind, this is not the most glaring of the errors committed against defendants by the directed verdict and judgment thereon in this action to recover for a wrong done plaintiff or a tort. The record discloses the plaintiff did not have and own the full face value and interest of this note. In fact, the record nowhere shows what the extent of the interest of plaintiff in this note was. True, for the purpose of making the contents of the note available to the use of plaintiff as collateral security, the payee named therein indorsed it over to the plaintiff and thus placed the legal title to the note in plain-

tiff. In such manner it could and did maintain its action at law against the maker to recover the judgment thereon, but the evidence discloses, instead of plaintiff being the absolute owner of the paper, it was merely the equitable owner of an interest therein as collateral security, holding the legal title to make such equitable right available. Thus, Campbell, the New York counsel for plaintiff, who placed the note in the hands of defendants for collection, notified defendants in his letter of May 31, 1911, transmitting the note to defendants for collection, as follows:

"I am inclosing herewith said note duly protested and would ask you to proceed in the matter at once, for which purpose I am inclosing herewith my check to your order for $25.00 for the purpose of suit. You say your charges will be 10 per cent. of the amount realized; this is agreeable to me, provided, of course, you allow me the usual one-third thereof.

"I cannot quite see that Sauntry could interpose any answer to a lawsuit in this matter, but of course on this point we should await developments. *The note was given principally as security for the payment of a bill which the hotel at that time held against H. J. Mayhem, but incidentally two dishonored checks made by Sauntry were also taken up, the amount thereof protest fees being $102.85 and $227.85 respectively, as well as a charge for telegram against Sauntry for $1.10.*"

It therefore appears, while the note was taken from Mayhem in payment of two small dishonored checks of Sauntry held by the plaintiff, the entire remainder of the note was taken by plaintiff as collateral security for a hotel bill owed by Mayhem. Now, what was the amount of this hotel bill owed by Mayhem to plaintiff? Clearly, when this bill was paid, the collateral would be released and returned to the equitable owner of the remainder, Mayhem. But how, in this state of the evidence, could either court or jury determine the extent of plaintiff's interest in the note? This interest was measured by the extent of the debt of Mayhem to the hotel, plus the amount of the dishonored checks and telegram, and, of necessity, that amount measured the extent of plaintiff's loss, conceding, as has been done, the fact that defendants were negligent and such negligence lost to plaintiff the fruits of the judgment by plaintiff held against Sauntry. To my mind, all well-considered decisions on this subject reach the same conclusion, and all text-writers speak with one voice.

Thus, 2 Shearman and Redfield on Negligence, § 753, states the rule as follows:

"Where an attorney is chargeable with negligence, an action lies immediately. * * * The damages do not necessarily extend to the nominal amount of the debt lost by the attorney's negligence, but only to the loss actually sustained. * * * The existence of the debt, alleged to have been lost by the attorney's negligence, must of course be proved by competent evidence."

Weeks on Attorneys at Law (2d Ed.) § 319, states the rule, as follows:

."In actions against attorneys for negligence or wrongs, the debt lost and costs sustained through their negligence furnished. when the action can be maintained, the obvious measure of damages, where this measure definitely exists."

In Stevens v. Walker, 55 Ill. 151, it was held:

"If injury results to the client, for the want of such a degree of reasonable care and skill, he must respond in damages, to the extent of the injury sustained."

In Quinn v. Van Pelt, 56 N. Y. 417, it was held that, in an action brought against an attorney for a breach of contract for employment to recover damages, the onus is upon the plaintiff "of proving the breach and the amount of damages, and he can only recover the damages thus proved." See, also, Russell v. Palmer, 2 Wilson, 325.

In Vooth v. McEachen, the Court of Appeals of New York, 181 N. Y. 28, 73 N. E. 488, 2 Ann. Cas. 601, held:

"Plaintiff sued defendant, an attorney, for settling a claim against an estate for less than its face value without authority. The court instructed that if there was any negligence, in consequence of which plaintiff had lost his case, it was not incumbent on him to show that but for the negligence he would have succeeded. Held error, as authorizing the adoption of a wrong measure of damages, as it was incumbent on plaintiff to show that the settlement was unauthorized, and that the claim was valid, and that it was worth more than the amount collected thereon."

In Maryland Casualty Co. v. Price, 231 Fed. 397, 145 C. C. A. 391, Ann. Cas. 1917B, 50, the Circuit Court of Appeals for the Fourth Circuit, Knapp, Circuit Judge, delivering the opinion for the court, said:

"We are satisfied that this conclusion is in accord with the weight of authority, although there is some conflict in the reported decisions. Among the cases which sustain the views we have expressed are Harter v. Morris, 18 Ohio St. 492; Bruce v. Baxter, 7 Lea (Tenn.) 447; Spangler v. Sellers (C. C.) 5 Fed. 822; Staples v. Staples, 85 Va. 76, 7 S. E. 199; Goldzier v. Poole, 82 Ill. App. 469; Vooth v. McEachen, 181 N. Y. 29, 73 N. E. 488, 2 Ann. Cas. 601; Gabbert v. Evans, 184 Mo. App. 283, 166 S. W. 635. The rule established by these cases is to the effect that suits against attorneys for negligence are governed by the same principles as apply in other negligent actions. If an attorney in disregard of his duty, neglects to appear in a suit against his client, with the result that a default judgment is taken, it does not follow that the client has suffered damage, because the judgment may be entirely just, and one that would have been rendered notwithstanding the efforts of the attorney to prevent it. It is said that there is a difference between the case of an attorney who fails to do anything for his client, and one who makes an inexcusable mistake in attempting to comply with instructions; but we do not perceive any basis in principle for such a distinction."

Conceding, therefore, the negligence of defendants to have been so fully established by the evidence a jury would have been certainly justified in finding, and surely would have found, the claim of the hotel company was thereby lost as against its debtor Sauntry, yet, as the amount of this claim so lost nowhere appears in either pleading or proof, and as the hotel company still holds Mayhem, one of its debtors, for payment of its loss, whatever that loss may be shown to be, and as there is neither allegation nor proof that its debtor Mayhem may not pay or be compelled to make good its loss, I favor a reversal of the judgment, that these errors may be corrected on a retrial of the case.