# FIRST STATE BANK OF BOYD v. H. L. HAYDEN.[1]

February 28, 1913.

Nos. 17,830—(199).

**Taxation of mortgages — effect of nonpayment of tax.**

Failure to pay the mortgage tax provided for by Laws 1907, c. 328, does not make the mortgage a nullity, but upon its existence the statute superimposes a state of dormancy whereby its enforcement is held in absolute abeyance until the performance of the statutory conditions precedent to its complete operation; and hence where the tax had not been paid at the time of the service of a notice to terminate an executory contract of sale of land, which, by virtue of section 1 of the statute, was subject to the tax, such notice

[1] Reported in 140 N. W. 132.

was totally inoperative to divest or otherwise affect the vendee's equitable estate in the land, and, furthermore, derived no vitality or effect whatever from the subsequent payment of the tax.

Action in the district court for Lac qui Parle county to determine adverse claims. The answer alleged that defendant became the purchaser at an execution sale under the judgment mentioned in the opinion, received a sheriff's certificate of sale, and no redemption had been made from the sale. The reply alleged service of notice of cancelation of a certain contract to purchase the property, served upon the judgment debtor, Nilson, on December 18, 1909, and failure of said Nilson to perform the conditions of the contract. The case was tried before Powers, J., who made findings and ordered judgment as stated in the opinion. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Oluf Gjerset* and *T. J. McElligott,* for appellant.

*A. W. Ewing* and *M. F. Soderberg,* for respondent.

PHILIP E. BROWN, J.

Appeal by the plaintiff from a judgment rendered against it in an action to determine adverse claims to lands in Lac qui Parle county. The record contains no case or bill of exceptions. The following is a synopsis of the court's findings necessary to an understanding of the questions requiring determination:

On February 13, 1908, the plaintiff, being the owner in fee of the land in controversy, and Nils M. Nilson, executed a written contract whereby the plaintiff contracted to sell and convey the land by warranty deed to Nilson, for the consideration of $4,355, Nilson agreeing to pay $1,355 thereof on October 13, 1908, and $1,000 on October 1, 1909, with interest, the remainder of the consideration consisting of the amount of a mortgage then on the property, which the grantee assumed and agreed to pay. One provision of the contract reads:

"And in case of the failure of said party of the second part (Nilson) to make either of the payments, or interest thereon, or any part thereof, or perform any of the covenants on his part hereby

made and entered into, then the whole of said payments and interest shall at the election of said first party (this plaintiff) become immediately due and payable, and this contract shall at the option of the party of the first part be canceled and determined and all right, title and interest acquired thereunder by said second party forfeited, by giving to said second party thirty days notice in writing of the intention of said first party to so cancel and determine this contract," setting forth in said notice the amount due upon said contract, and the time and place when and where payment can be made by said second party.

The contract further provided that such cancelation should reinvest the first party with all right, title, and interest thereby agreed to be conveyed and that all payments and improvements should be forfeited as liquidated damages.

On March 30, 1908, a judgment was duly obtained and docketed in the county, against Nilson, for $418.67, which then became a lien upon all his equitable rights, title, and interest in the land. On December 18, 1909, Nilson being in default in his payments due under the contract, for the years 1908 and 1909, the plaintiff caused a written notice of its cancelation as required by the contract and R. L. 1905, § 4442, to be duly served upon Nilson; but the latter never complied with the conditions in which default had been made. On February 17, 1910, $50 only having been paid upon the judgment against Nilson, the judgment creditor duly assigned the same to the defendant, which assignment was, on March 26, 1910, duly filed. On March 28, 1910, execution was duly issued upon the judgment, and on April 6 thereafter a levy was duly made upon Nilson's interest in the land. The contract between the plaintiff and Nilson was not filed for record until May 17, 1910, nor was the registration tax under Laws 1907, p. 448, c. 328 [R. L. Supp. 1909, §§ 1038–25 to 1038–33], paid until that date. On May 21, 1910, the sheriff duly made sale under the execution, to the defendant, and delivered to him a sheriff's certificate, which was duly recorded.

The court's conclusions of law were in effect as follows:

1. That the contract not having been recorded, and the registration tax not having been paid thereon until May 17, 1910, the notice

of cancelation served upon Nilson on December 18, 1909, was ineffectual either to terminate the contract or to foreclose his interest, and that he remained the equitable owner of the land; the plaintiff, however, holding the legal title as security for the unpaid purchase money.

2. The notice of cancelation neither divested nor affected the lien of the defendant's judgment.

3. By the assignment of the judgment and the execution sale to him, the defendant succeeded to and owned the lien acquired by the judgment, and that the plaintiff's title was subject to that lien.

Subsequently the plaintiff moved for additional findings of fact and conclusions of law, and to amend and change the conclusions of law so as to require judgment in favor of the plaintiff. This motion was overruled, and judgment entered in accordance with the findings made.

1. We have considered the plaintiff's application for amended and additional findings. Assuming the plaintiff's right to have a review of the order in this regard on this appeal, we find no ground for concluding that the court erred in denying the application.

2. Coming to the merits of the appeal, the main question raised by the record is: Are the conclusions of law embodied in the judgment warranted by the findings of fact? 1 Dunnell, Minn. Dig. §§ 344, 387. This question, we think, depends upon what results followed in legal effect from the service of the notice of cancelation of the contract. If it was abortive, then the conclusion reached by the trial court must be sustained. It is not disputed, nor could it successfully be, that the judgment assigned to the defendant was a lien upon Nilson's interest in the land at the time of the service of the notice to terminate the contract. R. L. 1905, § 4272; Reynolds v. Fleming, 43 Minn. 513, 45 N. W. 1099; Hook v. Northwest Thresher Co. 91 Minn. 482, 98 N. W. 463. At the time of the execution of the contract, R. L. 1905, § 4442, provided substantially, so far as here material, that, before any contract for the conveyance of the real estate wherein the vendor reserves the right to terminate the same can be be so terminated, such right must be exercised by serving upon the purchaser a notice specifying the conditions in which default has been

made, and stating that such contract will terminate 30 days after service unless prior thereto the purchaser shall comply with such conditions and pay costs. This statute, slightly amended, in particulars not here material, by Laws 1909, p. 406, c. 355 [R. L. Supp. 1909, § 4442], has since remained in force.

As tersely declared by the present Chief Justice in Hage v. Benner, 111 Minn. 365, 368, 127 N. W. 3, in referring to this section, "the proceeding authorized by the statute is in legal effect a foreclosure of the vendee's equity of redemption." This court has frequently declared that such contracts cannot be rescinded for defaults of the vendee without the service of the statutory notice. 3 Dunnell, Minn. Dig. § 10091. None of these propositions are controverted by the plaintiff. It insists, however, that, by the service of the notice, Nilson's equitable estate in the land and the lien of the defendant's judgment thereon were extinguished. The defendant concedes that unless the service of the notice was vitiated by the failure of the plaintiff to comply with the provisions of Laws 1907, p. 448, c. 328, Nilson's interest in the land was terminated, but not the interest of the defendant, which latter insistence we do not consider necessary to be considered or determined.

The act last referred to, speaking generally, imposes a tax on mortgages, and provides that the same shall be paid on or before the time of filing the mortgage for record, and also that (section 7, p. 451) "no such mortgage, no papers relating to its foreclosure, nor any assignment or satisfaction thereof shall be recorded * * * unless said tax shall have been paid; nor shall any such document, or any record thereof, be received in evidence in any court, or have any validity as notice or otherwise." Section 1 [p. 448] of the act provides that "an executory contract for the sale of land, under which the vendee is entitled to or does take possession thereof, shall be deemed, for the purposes of this act, a mortgage of said land for the unpaid balance of the purchase price," and that "no instrument relating to real estate shall be valid as security for any debt, unless the fact that it is so intended and the amount of such debt are expressed therein."

The plaintiff argues that this statute has no application to the case

121 M.—4.

under consideration, for the reasons, stated substantially in the language of its brief, that there is no finding whatever that the vendee, Nilson, took possession of the land under the contract or ever was in possession thereof, and that the court's findings concerning the nature and conditions of the contract demonstrated that a sale of the land in præsenti was not contemplated, but that the contract was an agreement to sell and convey the land upon compliance with its terms, and, further, that the court failed to find that the vendee was entitled to the possession of the land under the contract. In other words, the plaintiff claims that the contract involved is not an "executory contract for the sale of land, under which the vendee is entitled to or does take possession thereof," within the purview of section 1 of the statute, because the findings fail to disclose that the vendee was either entitled to or did in fact take possession of the land.

We think, however, that this point is clearly an afterthought, not having been brought to the attention of the trial court, and, furthermore, that, while the findings do not expressly state any facts concerning the possession of the land, it sufficiently appears by inference that Nilson took possession under the contract, else why did the plaintiff pay the mortgage tax before recording the contract, and apply for additional findings to the effect that the plaintiff immediately after February 13, 1908, the date of the contract, found it necessary, "to pay a one-half part" of a certain judgment and attachment held by the Boyd National Bank "to protect said Nilson in the possession of said land under said contract?" We hold that the statute referred to applies.

We come to the consideration of the effect of the failure of the plaintiff to pay this mortgage tax before causing notice of cancelation of the contract to be served.

The statute is purely a revenue measure, and we find nothing therein to indicate that it was the legislative intent to declare instruments void for noncompliance therewith. In order so to hold we would have to say that the execution of an instrument of the kind covered by the statute and its recordation or the payment of the tax thereon must be practically simultaneous, for otherwise, under such a theory, there would be an interval of noncompliance with the statu-

tory requirements which would invalidate the instrument, and this though it was the intention of the parties at all times to pay the tax and the same was actually paid as soon as possible and within a reasonable time. Or, modifying this theory slightly, if we should hold that the instrument is validated by registration and tax payment within a reasonable time, there would still remain the interim in which it would be of no effect, and whether it ever became effective would depend upon what constitutes a reasonable time in this regard, as to which there is neither guide nor even suggestion in the statute. Furthermore, it would seem to follow that the matter of priority between several mortgagees with actual notice, or between a mortgagee and a subsequent purchaser with notice, would frequently have to be resolved by a race to the register's office, thus abrogating the wholesome doctrine of actual notice. Such a construction is unnecessary, and had the legislature intended such drastic results they would, we think, have expressed their intention in unequivocal terms, and likewise would have provided which party should pay the tax in order that the innocent one should not suffer for the other's fault.

It may be said that in section 7 there is a suggestion of invalidity of the instrument as distinguished from dormancy; but we are satisfied that this section, when taken as a whole and in connection with the rest of the act, goes merely to the matter of the operation and enforcement of the instrument, and not to its legal existence as a valid contract.

Nor are we impressed with the argument that nothing short of a penalty of nullity will insure compliance with the statute. Such has not been the experience under the recording acts. Moreover, this argument, while unanswerable as against a claim that subsequent compliance should validate previous proceedings taken to enforce remedial rights conferred by the contract by one who has failed to observe the statute, is not at all persuasive as indicating that parties would generally neglect to avail themselves of the safeguards of registration or tax payment, in order to evade so reasonable an exaction as the tax imposed.

This court has considered certain phases of this statute, in Forest Lake State Bank v. Ekstrand, 112 Minn. 412, 128 N. W. 455, Orr v.

Sutton, 119 Minn. 193, 137 N. W. 973, and Mason v. Fichner, 120 Minn. 185, 139 N. W. 485; and in none of these cases is there any intimation that nonpayment of the tax renders the instrument an absolute nullity. Moreover, if such had been the view, much of the discussion contained in these cases would have been immaterial.

On the other hand, we cannot assume that the legislature intended that mortgagees and vendees should be allowed to ignore the provisions of, and thus to emasculate, the statute by proceeding to enforce their contracts precisely as they would be entitled to do after compliance with the statute. We think that the legislature, having in mind not only recordable contracts but also unacknowledged and hence unrecordable instruments, intended to render all contracts within the terms of the act unenforceable in or by any legal proceeding until the tax has been paid, whether the instrument is recordable or otherwise. The contract itself comes into existence through the contractual acts of the parties and exists as such without reference to the statute, but upon this existence the statute superimposes a state of dormancy whereby its enforcement is held in absolute abeyance until the performance of the statutory conditions precedent to its complete operation.

This conclusion leads to an affirmance; for, as we have pointed out, the service of the notice to cancel upon Nilson was merely a step in a strict foreclosure of the plaintiff's contract. Furthermore, under R. L. 1905, § 4442, a copy of the notice, together with proof of its service, and an affidavit showing noncompliance with the terms of the notice, may be recorded, and are made prima facie evidence of the facts recited. These steps cannot be taken until the tax has been paid. The facts, therefore, bring the case within the operation of section 7; the notice of cancelation of the contract clearly being a "paper relating to its foreclosure," which can be accorded no "validity as notice or otherwise." This section embodies the construction which we have given the statute, and emphasizes the view that prior to the payment of the tax all steps towards enforcement of contracts within its terms are nugatory.

Order affirmed.