# CHARLES N. ORR and Others v. WILLIAM SUTTON and Others.[1]

## July 17, 1914.

## Nos. 18,433—(55).

**Former appeal — decision conclusive.**

1. A proposition decided upon a former appeal becomes the law of the case and should not be re-examined in a subsequent appeal in the same action.

**Tender — finding — evidence.**

2. The pleading and evidence required a finding on the issue of tender of payment by the judgment debtor of the judgment under which plaintiffs effected redemption. If the findings in this case are to be construed to the effect that, by direct authority of the judgment debtor, a tender in lawful money of the full amount of plaintiffs' judgment was not made to them personally prior to the time when they could use the same for redemption purposes, they are not justified by the evidence.

**Right of judgment creditor to redeem.**

3. No one in the line of redemptioners, nor an intermeddler, may by tender of payment of a judgment impair or destroy a judgment creditor's right to use the judgment to effect redemption.

**Same — action to compel satisfaction of judgment.**

4. To destroy a judgment creditor's right to use the judgment as a means for obtaining certain land through redemption, it is not indispensable that the judgment creditor, in addition to tender of payment, bring suit to compel satisfaction of the judgment and deposit the money tendered in court.

**Same — tender of payment of judgment.**

5. A tender by the judgment debtor of the full amount due on a judgment, under which the judgment creditor has filed an intention to redeem land, before the arrival of the time when the judgment could be used for such purpose, and under circumstances clearly disclosing that both parties appreciated the purpose of such tender, destroys the right of the judgment creditor to thereafter use the judgment as a basis for redeeming such land.

[1] Reported in 148 N. W. 1066.

Note.—Conclusiveness of prior decisions on subsequent appeals, see note in 34 L.R.A. 321.

**Redemption by judgment creditor with notice of tender.**

6. But if a redemption is made by a judgment creditor whose right to make it, though good on the face of the record, has, in fact, been destroyed by the tender of the payment of the judgment, the title of the purchaser at the sale nevertheless passes to him, if the holder thereof accepts the redemption money with full knowledge of the tender.

**Estoppel — equities lacking — compliance with statute.**

7. Assuming a valid tender proven, it is *held:*

(a) That the defendant Torinus, the holder of the title acquired through the mortgage foreclosure sale, by accepting the redemption money paid by plaintiffs, judgment creditors, with full knowledge of the facts showing that they had no right to redeem, thereby suffered plaintiffs to succeed to his title and cannot now question the validity of their redemption.

(b) That the evidence does not show any rights or equities which required the court to relieve the defendant William Sutton, junior to plaintiffs in the line of redemptioners, who attempted to redeem under a mortgage, recorded without the prepayment of the registry tax. Nor has Sutton alone, or in conjunction with any other defendant, any equities through which to attack plaintiffs' title.

(c) That the defendant Sauntry, the owner, after the expiration of the year of redemption, had no interest in the land so as to question plaintiffs' redemption, and his right to have the land applied to the payment of such of his debts as were liens thereon, depended entirely upon the lienholders making redemption in strict conformity with the statute.

Action in the district court for St. Louis county by Charles N. Orr, Herman F. Stark, Charles E. Collett, copartners as Orr, Stark & Collett, and Charles J. Spratt against William Sutton, Lyman Sutton, William Sauntry and his wife, Russell M. Bennett, Edmund J. Longyear, Louis E. Torinus and all other persons claiming any right, title, estate, interest or lien in the real estate described. The facts are set forth in the opinion.

The case was tried before Fesler, J., who made findings and ordered judgment in favor of plaintiffs, removing the cloud on their title and interest in the land by the record of the instruments mentioned in the opinion and restraining defendants from asserting any title or lien upon the title and interest of plaintiffs. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*J. N. Searles, Manwaring & Sullivan* and *Butler & Mitchell*, for appellants.

*William G. White* and *Theodore Hollister*, for respondents.

HOLT, J.

Action to quiet title. William Sauntry owned an undivided half of valuable mining lands in St. Louis county, this state, which he mortgaged to secure the sum of $30,000. He defaulted and the mortgage was duly foreclosed by advertisement. The year for redemption expired on September 20, 1911. The rights acquired by the purchaser at the sale were on the last named date held by Louis E. Torinus, the sheriff's certificate having been duly assigned to him. The mortgagor was insolvent, and unsatisfied judgments existed against him. Transcripts of the following judgments were docketed in St. Louis county prior to September 21, 1911: (1) A transcript of a judgment in favor of Nathan E. Franklin for $8,243.34, docketed July 22, 1910. This judgment was assigned to Louis E. Torinus and proper record made on September 23, 1911; (2) a transcript of judgment in favor of Fred Rossiter for $1,589.35, docketed October 24, 1910; (3) a transcript of a judgment in favor of John J. Kilty for $329, docketed at 5:15 p. m. September 20, 1911, together with proper records showing an assignment of the judgment to William Sutton, September 18, 1911; and (4) a transcript of a judgment in favor of Robert W. Hunt & Co. for $741.38, docketed at 5:19 p. m. September 20, 1911, with proper records showing an assignment of this judgment to plaintiffs January 11, 1911. In the evening of September 20, 1911, William Sauntry executed a second mortgage on the land to William Sutton to secure a demand note for $50. It appears that this indebtedness represented a portion of attorney's fees owing to one Grannis from Sauntry which Grannis assigned to William Sutton. This mortgage was filed in the office of the register of deeds at 10 p. m. on the same day. But no mortgage registry tax was paid thereon until long afterwards. No registry number was placed on the mortgage, nor was it indexed until the next morning after it then had been taken to the county treasurer and he had certified thereon that it was exempt from taxation. Proper notices of

intention to redeem were filed so that the respective judgment creditors were placed in line of redemptioners in the order above given and the mortgagee William Sutton last, provided each had a good right to redeem. Sauntry, the mortgagor and owner, did not redeem. Louis E. Torinus redeemed on September 25, 1911, as assignee of the Franklin judgment. Fred Rossiter the next in line did not offer to redeem. Nor did William Sutton make any attempt to redeem as assignee of the Kilty judgment. On October 5, 1911, plaintiffs, as assignees of the Robert W. Hunt & Co. judgment, redeemed; and on October 9, 1911, William Sutton in turn redeemed as mortgagee in the $50 mortgage mentioned. The sheriff upon each of these redemptions issued his certificate to the redemptioner. October 10, 1911, William Sutton, claiming to be the owner of the land under his redemption, mortgaged the same to Louis E. Torinus to secure the payment of $10,000. The complaint sets out the various matters very fully, alleges conspiracy between the defendants to circumvent plaintiffs and deprive them of their right to redeem, and asks that the claims of each defendant to the land be barred and the cloud cast upon plaintiffs' title by the Sutton redemption, the Torinus mortgage, and the records thereof be removed. In addition to Torinus, Sutton and Sauntry, the latter's wife and one Lyman Sutton are made defendants, also the lessees of the mine, but the latter are in no way affected. The court found plaintiffs to be the owners, that the defendants had no right, title or lien in or to the land, and directed judgment quieting title in plaintiffs and removing the cloud cast on their title by the record of the Sutton redemption and mortgage, and the mortgage to Torinus. Defendants appeal from the order denying their motion for a new trial.

The defendants contend for a new trial upon three grounds: (1) No mortgage registry tax was required upon the $50 mortgage under which Sutton redeemed, hence his redemption vested title in him; (2) plaintiffs lost their right to redeem by the tender of payment of their judgment prior to the time when such right could be exercised; (3) even if the tax be held applicable to this mortgage, equities will relieve defendants since its nonpayment was the result of an honest

mistake induced by the conduct of the administrative officers of the state and county, and the tax was paid before the trial.

In a former opinion in this case (Orr v. Sutton, 119 Minn. 193, 137 N. W. 973, 42 L.R.A.[N.S.] 146) we held that this mortgage, upon which the registry tax imposed by chapter 328, p. 448, Laws 1907, was not paid before it was recorded, furnished no sufficient legal basis for redemption from the foreclosure sale here involved. This was following and applying the rule announced in State v. Fitzgerald, 117 Minn. 192, 134 N. W. 728, that all mortgages including those of $50 and less are subject to the registry tax. We are earnestly importuned to re-examine the question, on the ground that that decision is wrong and that the court was led astray, because counsel on both sides designedly took the position that the law violated the Constitution, unless it was held applicable to all mortgages however small. Even if the court, as now constituted, entertained doubts concerning the soundness of the Fitzgerald decision, a well-settled rule of law stands in the way of any re-examination of the question upon this appeal, for on this proposition our former decision herein is the law of the case and binding on us. There is nothing in the situation which calls for a deviation from this well-established doctrine. No application was made for reargument when the former appeal was determined. In Terryll v. City of Faribault, 84 Minn. 341, 87 N. W. 917, it is said: "The case was here on a former appeal and the notice of claim for damages was held sufficient. 81 Minn. 519, 84 N. W. 458. That decision, whether right or wrong, must be treated as the law of the case and the question cannot be re-examined at this time." The same rule was stated thus in Bradley v. Norris, 67 Minn. 48, 69 N. W. 624: "This court has the right to overrule the decision made on the former appeal in some other case, but in this case it must be followed." See also Schleuder v. Corey, 30 Minn. 501, 16 N. W. 401; Smith v. Glover, 50 Minn. 58, 52 N. W. 210, 912; Tilleny v. Wolverton, 54 Minn. 75, 55 N. W. 822; Maxwell v. Schwartz, 55 Minn. 414, 57 N. W. 141; St. Paul Trust Co. v. Kittson, 67 Minn. 59, 69 N. W. 625; Phelps v. Sargent, 73 Minn. 260, 76 N. W. 25; Piper v. Sawyer, 78 Minn. 221, 80 N. W. 970; Hibbs v. Marpe, 84 Minn. 178, 87 N. W. 363. To the same effect many authorities may

be cited from other jurisdictions: Adams Co. v. B. & M. R. Co. 55 Iowa, 94, 2 N. W. 1054, 7 N. W. 471; Heffner v. Brownell, 75 Iowa, 341, 39 N. W. 640; Bem v. Shoemaker, 10 S. D. 453, 74 N. W. 239; Bolton v. Hey, 168 Pa. St. 418, 31 Atl. 1097; and Case v. Hoffman, 100 Wis. 334, 72 N. W. 330, 74 N. W. 220, 75 N. W. 945, 44 L.R.A. 728.

One of the main defenses pleaded is, plaintiffs were tendered payment of their judgment before the time arrived at which it might be used to effect redemption, therefore the one made by them was wrongful and of no validity to pass title. It is undisputed that on September 27, 1911, Lyman Sutton, accompanied by defendants' attorney, brought $785 in gold coin to plaintiffs' office and tendered the same to them personally in payment of the judgment held by them. The amount was sufficient and was verified by one of plaintiffs. Beyond quibble written authority from Sauntry to Lyman Sutton to make the payment was exhibited to plaintiffs. The money was not Sauntry's. It was furnished by Lyman Sutton. When plaintiffs refused to accept, Sutton placed the money in his safe, where it remained ready for plaintiffs until some time in the following December. Defendants insist a valid tender was proven and should have been definitely found by the court, and, in case the findings should be construed as negativing a tender, they contend the evidence does not justify the same. It is commendable to find only the ultimate facts. But in this case tender was set up as a specific defense or ground for contesting the validity of plaintiffs' redemption. Whether William Sauntry actually offered plaintiffs lawful money in sufficient amount to pay their judgment prior to their redemption, was a matter of pure fact. Whether such fact constituted a legal defense, is a question of law. The court below may have been satisfied of the existence of the fact, but may have concluded that the legal effect was of no consequence to defendants. This court may take a different view. It is thus apparent that an absence of a specific finding upon the issue of tender is not fair to defendants, nor, indeed, to plaintiffs were they appellants. It is true the request to make findings on this issue was not in the proper form (Hall v. Sauntry, 72 Minn. 420, 75 N. W. 420, 71 Am. St. 497), nevertheless tender was so important

a matter to a right decision that the findings should not leave the fact of its being made in doubt. This is a case where a definite finding should have been made on this issue. Turner v. Fryberger, 99 Minn. 236, 107 N. W. 1133, 109 N. W. 229. Moreover, even if the findings, coupled with the court's refusal to amend the same to show tender, should be construed equivalent to a finding that tender was not proven, we are of opinion that the evidence as it now stands does not so warrant. The money was there. Plaintiffs were lawyers. They knew as well as defendants what it was intended for, and what was at stake. Their refusal to accept payment was no doubt a deliberate act with full knowledge of the situation. They took the chance of defendants not being able to establish that the tender was made by authority and direction of Sauntry, or else that the law did not give the debtor the right to stop plaintiffs at that time from resorting to the land for the satisfaction of their judgment. We shall therefore assume that plaintiffs were tendered payment of their judgment before the arrival of the time when they could use it for the purpose of redemption.

True, no one in the line of redemptioners, either ahead of or behind plaintiffs, nor any intermeddler, could extinguish or impair their right to redeem by offering to pay their judgment. The only one who possessed this right on September 27, 1911, was the judgment debtor. His right was absolute. It is immaterial who furnished him the money, or what his motives were, he was then entitled to pay the judgment or cause it to be paid, for the time had not arrived when plaintiffs could use it for redemption purposes.

It is asserted the tender was unavailing because when refused the only way to keep it good was to pay the money into court and begin an action to compel a satisfaction of the judgment. Section 7908, G. S. 1913, is cited. This provision does not in terms apply to this case. But we may admit that the procedure suggested by respondent is not improper. However, it is not absolutely necessary in order to give effect to the tender. The testimony shows that the gold was kept intact for plaintiffs for some time after this action was brought and the answer served. In the answer Sauntry still asserts a readiness to pay. At any time after Sutton's redemption

plaintiffs could have received from the sheriff full payment of their judgment and all moneys paid by them in their attempt to redeem, including the wrongful payment of the Kilty judgment. We think the tender was kept good and the money is available now. Dunn v. Dewey, 75 Minn. 153, 77 N. W. 793; Murray v. Nickerson, 90 Minn. 197, 95 N. W. 898.

The claim is also presented that the tender unaccepted was of no effect. Harking back to the early case of Jackson v. Law, 5 Cow. (N. Y.) 248, Law v. Jackson, 9 Cow. (N. Y.) 641, text books and decisions state that a judgment lien cannot be discharged by tender. There must be actual payment. The argument is that so long as the judgment remains a lien it furnishes a basis under the statute for the right to redeem. But there is quite a unanimity among the authorities, in states where the mortgagee's estate is considered a lien or pledge merely, that a tender of the debt discharges the lien. Kortright v. Cady, 21 N. Y. 343, 78 Am. Dec. 145; Moore v. Norman, 43 Minn. 428, 45 N. W. 857, 9 L.R.A. 55, 19 Am. St. 247. That there are inherent differences in the quality of a judgment lien and a mortgage lien which justify the rule that a tender of payment of one does not discharge a tract of land from its lien, while it does as to the other, may be doubted. The owner of the debt in either case may voluntarily release any real estate from the one as well as from the other without discharging any part of the debt. Be that as it may, this court has recognized the distinction in Rother v. Monahan, 60 Minn. 186, 62 N. W. 263. But that case also clearly establishes the principle applicable here, namely, that a tender of payment of a judgment by the judgment debtor destroys and extinguishes the right to make the judgment the basis for a redemption. It may well be that, before any notice of intention to use the judgment as against any particular land is filed, a tender of payment does not impair or destroy the judgment creditor's right to make use of or enforce the judgment generally. But when, after he has so done, the judgment debtor tenders payment, the creditor must accept the money and let that land alone. Any further attempt to proceed against the land in question after such tender must be considered wrongful. Mr. Justice Mitchell thus states the

view of the court in the case cited: "The act of the defendant in attempting, under the circumstances, to use this judgment for redemption purposes was wholly in his own wrong. If, under similar circumstances, he had attempted to enforce the judgment by execution, a court would have unquestionably enjoined him from doing so, or, if a sale had been made on the execution, set it aside as wrongful, and an abuse of the process of the court, and compelled defendant to accept the tender and satisfy his judgment. Mason v. Sudam, 2 Johns Ch. (N. Y.) 172. The same principle applies where, as in this case, the defendant has wrongfully attempted, notwithstanding the tender, to use the statutory process of redemption for the purpose of collecting his judgment out of this land. It is wholly immaterial what the object of the debtor and mortgagor was in making the tender,—even if it was to prevent a redemption by defendant. He must be presumed to have some interest in preventing such a redemption. It may be that he had made some advantageous arrangement with the plaintiff,· the holder of the certificate of sale. But what his intent or motive was it is not for the courts to inquire. He had a legal right to pay the judgment, and thereby prevent a redemption by defendant. Defendant's duty and only right, under the circumstances, was to accept the tender and satisfy the judgment. His refusal to do so and his attempt to use his judgment for redemption purposes were wrongful and a clear abuse of the statutory right of redemption. The court will, under such circumstances, set aside the attempted redemption, and compel defendant to do what he ought to have done in the first instance,—accept his money and satisfy his judgment." And we think it has been definitely determined in Roberts v. Meighen, 74 Minn. 273, 77 N. W. 139, that it is not necessary, in order to make the judgment creditor's attempt to redeem wrongful, that the judgment debtor prior to redemption bring the money into court and commence suit to compel satisfaction of the judgment. In that case payment was merely tendered, no money was brought into court and no action brought until after redemption. The point was distinctly made in appellant's brief that such tender was not sufficient to destroy the right to use the judgment as a basis for redemption. Chief Justice Start, who tried the case

of Rother v. Monahan, supra, in the court below and therein adverted to the rule that tender of payment of a judgment does not release its lien on real estate, writes the opinion sustaining the court below in the ruling that the tender as made destroyed the right to use the judgment for redemption purposes.

Is any defendant in position to object to plaintiffs' redemption? When the owner fails to redeem from a mortgage foreclosure sale, the purchaser acquires the title the owner had when the mortgage was given. If lienholders redeem under the statutory provisions, the title acquired by the purchaser at the foreclosure sale is thereby vested in such redemptioners. Even when the redemptioner has no right to make it, or does not conform to the law in so doing, the title nevertheless passes to him, if the one from whom redemption is made accepts the redemption money, unless there exists some lienholder whose redemption is interfered with or prejudiced. Willard v. Finnegan, 42 Minn. 476, 44 N. W. 985, 8 L.R.A. 50; Todd v. Johnson, 50 Minn. 310, 52 N. W. 864; same case in 56 Minn. 60, 57 N. W. 320; Clark v. Butts, 73 Minn. 361, 76 N. W. 199. No doubt Torinus could have objected to plaintiffs' redemption, but he did not. By accepting the redemption money paid by plaintiffs he relinquished to them the title he had. He turned over his money to be used by Sutton in making the redemption from plaintiffs. There is nothing in the record to suggest that Torinus did not have full knowledge of the tender when he accepted and receipted for the money. And we think it follows from the authorities hereinbefore cited that the only person who may attack a redemption fair on the face of the record, but wrongful in fact, where the redemption money has been accepted by the one holding the title of the purchaser at the foreclosure sale, is one who has still some beneficial interest in the land, or one who, being a subsequent lienholder, has availed himself of the right to redeem strictly in accordance with the provisions of the statute.

Whether Torinus be regarded as acting for Sutton or for himself alone, the fact remains that plaintiffs' right to redeem was conceded by both in that their redemption money was accepted and in that both plant themselves on the redemption by which Sutton

claims to have succeeded to the title plaintiffs secured by their redemption.

The defendant Sutton insists that in equity he should be relieved from the mistake he made in not paying the mortgage registry tax, notwithstanding the former decision that he had no legal statutory right to redeem. For the purpose of considering the equities urged, let us for the moment assume that the provisions of the redemption statute may be suspended or abrogated by the courts. The one who asks equitable relief, even against a wrongdoer, must show equities of some merit and clean hands. If we take plaintiffs on the one hand and Torinus and the Suttons on the other, we look in vain for any appealing equities. The Suttons sought the land. So did plaintiffs. Each party bought up judgments against Sauntry for the sole purpose, apparently, of thereby securing title to this land. William Sutton made no attempt to redeem under the Kilty judgment, but the money plaintiffs paid on that was also accepted and receipted for by Torinus, presumably under Sutton's direction, so that, on October 5, 1911, when Sutton attempted to redeem, the only equity or right he had was this $50 mortgage. It is perfectly obvious that the only reason for purchasing this small, stale claim against Sauntry was to circumvent plaintiffs who had outwitted him in the race to be the last in the line of redemptioners. Both Sauntry and the Suttons are very careful in the pleadings, as well as in the testimony, to deny any intent to obtain for Sauntry either the land or any beneficial interest whatever therein. Sauntry and his wife would be the only persons in all this company entitled to consideration in the search for equities, and they disclaim. Torinus got in to make $2,500, the Suttons to get the land, and when the means provided for that purpose slipped from under, this mortgage was obtained as a last resort. Neither the claim supporting the mortgage, nor the circumstances under which it was procured, furnish equities of merit.

It is also apparent that William Sutton was not misled by the interpretations placed on the mortgage registry law by either state or county officials, even if this should be held excusable. His attorneys counseled together on this proposition, evidently without

placing reliance on the advice given, or the practice adopted, by any official. In fact, no attempt was made, on the night the mortgage was filed for record, to have the indorsement made on the mortgage by the proper official, that it was exempt from taxation in accordance with the custom adopted in St. Louis county.

Neither does it appear to us that William Sauntry may invoke equities to vest title in Sutton under his attempted redemption. Sauntry's failure to redeem terminated his estate in the land. His title had vested in Torinus as assignee of the purchaser at the foreclosure. It did not harm Sauntry if Torinus allowed plaintiffs to redeem without right. On the contrary Sauntry's debt to plaintiffs of over $700 was thereby effaced. If there had been any claim on the part of Sauntry that he had some beneficial interest in or to the land which the Suttons were assisting him to secure, the case might have been brought under the principle controlling in 'Roberts v. Meighen, supra. But it is clear from the pleadings and from the evidence that both Sauntry and the Suttons take the position that Sauntry has no interest whatever in the land, that the redemption under the $50 mortgage was for the benefit of the Suttons alone, outside of the $2,500 bonus to Torinus, and that the sole ground upon which Sauntry contests plaintiffs' redemption is that he is entitled to have the land appropriated to pay his debts to the greatest possible extent. However, he could not compel Sutton to redeem. The right of Sauntry to have the land appropriated to the payment of the liens of his creditors was all the time subject to the condition that such creditors availed themselves of the redemption statute in strict conformity to its provisions. That was wholly within their choice. Hoover v. Johnson, 47 Minn. 434, 50 N. W. 475; State v. Kerr, 51 Minn. 417, 53 N. W. 719; Bartleson v. Munson, 105 Minn. 348, 117 N. W. 512. If Sutton because of noncompliance with the redemption laws failed to appropriate the land to the satisfaction of Sauntry's debts, and cannot be relieved, it would seem to follow that the only right which Sauntry now claims, namely, to have his $50 debt to Sutton wiped out, is also gone.

But we do not believe provisions of the redemption statute can be abrogated, or in particular cases relieved against by the courts

in the absence of some agreement or act of waiver of the party whose rights are to be affected. No one will claim that, if through a mistake a mechanic's lien was filed too late, equity could relieve. Nor can an owner be heard to be relieved against his mistake in permitting the year of redemption to expire, or a creditor against the mistake or omission to file his lien as the statute requires, except in cases where the mistake or omission has been induced by the agreement or acts in the nature of waiver on the part of the person who is to be affected by the relief. No act of plaintiffs can be pointed to as inducing William Sutton or Torinus to accept the redemption money, or to refrain from paying the mortgage tax, or to take any other step to acquire the land. It is true, the mortgage without the tax paid was not a nullity, except as a basis for redemption. Cases like Forest Lake State Bank v. Ekstrand, 112 Minn. 412, 128 N. W. 455; Mason v. Fichner, 120 Minn. 185, 139 N. W. 485; State Bank of Boyd v. Hayden, 121 Minn. 45, 140 N. W. 132; Staples v. East St. Paul State Bank, 122 Minn. 419, 142 N. W. 721, are cited to the effect that equity will relieve against mistake in not paying the mortgage registry tax. But these cases relate to a reformation of instruments which defectively expressed the intention of the parties because of mutual mistake. In none did the court attempt to affect the rights of third parties who had neither taken part nor induced the transaction. In State v. Kerr, supra, it is said the court does not possess the power to enlarge the redemption statute: "The right of redemption is a strict legal right, to be exercised, if at all, in accordance with the terms of statute by which the right is conferred, unless waived or extended by the party whose interests are to be affected. * * * As a general rule, it may be said that when a valid legislative act has determined conditions on which rights shall vest or be forfeited, and no fraud has been practiced, no court can interpose conditions or qualifications in violation of the statute. The courts have no power to relieve against statutory forfeitures." When William Sutton attempted to use his $50 mortgage as a basis of redemption, the right had been forfeited because the mortgage was not legally on record. As tending in the same direction, see Bagley v. McCarthy Brothers Co. 95 Minn. 286, 104 N. W. 7; Brady v.

127 M.—4.

Gilman, 96 Minn. 234, 104 N. W. 897, 1 L.R.A.(N.S.) 835, 113 Am. St. 622.

So that, assuming the tender of payment of plaintiffs' judgment made their attempt to redeem wrongful, they nevertheless are now owners, because their redemption, fair on the face of the record, was acquiesced in by Torinus, from whom they redeemed by his accepting their money, thereby transferring the purchaser's title at the foreclosure sale to them; and as to William Sauntry he has foreclosed himself from attacking plaintiffs' title, because he disclaims all bene-eficial interest in or to the land through the Sutton redemption; and as to William Sutton, if Torinus acted for him, he is bound by the acceptance of plaintiffs' redemption money, and if he relies on his redemption, he had no legal or equitable right to make it.

Taking the view of the evidence most favorable to defendants on all controverted matters, we nevertheless reach the conclusion that the decision of the trial court must be affirmed.

PHILIP E. BROWN, J. (dissenting).

When the opinion in this case came to the writer the following dissent was prepared and submitted. Subsequently, pursuant to what seems to be the usual practice, the latter part of the main opinion was rewritten and enlarged. That the controversy may be brought to an end, the dissent is filed without alteration.

I dissent from the propositions that Sutton should not be relieved from the consequences of failing to pay the mortgage registry tax and that plaintiff is entitled to equitable relief.

An excusable mistake whereby one loses a valuable legal right gives rise to an equity, not only as against the person responsible for it or privy thereto, but also against anyone who will not be injured by its correction. Lane v. Holmes, 55 Minn. 379, 57 N. W. 132, 43 Am. St. 508. Orr would not, in legal contemplation be injured by judicial recognition of Sutton's redemption; for the sole purpose of the statute allowing a creditor to redeem is that his claim may be saved and paid, which would be accomplished in this case if plaintiffs' right to question Sutton's redemption were denied. The

statute does not contemplate speculation in the mortgaged property with the view of obtaining title thereto, except as such is necessarily involved in efforts of creditors to save their claims and as incident to the end that the property shall go as far as possible towards payment of the mortgagor's debts. Sprague v. Martin, 29 Minn. 226, 13 N. W. 34. Hence neither Orr's nor Sutton's acts should be regarded as those of an owner seeking to protect his specific rights in property as such, and their respective redemptions should be considered solely with reference to their status as creditors attempting to save their claims, which, if valid, are entitled to due protection, regardless of amount. Aside from fraud, the desire of either to secure the land itself is immaterial, either for or against him, and the equities of each, if any, should rest in and be weighed by their standing as creditors. Thus tested, the circumstances disclosed on the trial presented no equity in Orr needing protection, for his rights as a creditor were conserved by Sutton's redemption; whereas Sutton had an equity arising from the fact that he would lose at least the security for his debt unless the mistake, whereby his attempt to redeem fell short of legal requirements, was corrected. That this mistake, though one of law, was excusable, seems unquestionable; for if Sutton was not equitably justified in accepting the prior practical construction placed upon the statute by the officers of the state, including the attorney general, it is difficult to conceive of such justification for any act attributable to an erroneous conception of the law. In a proper case, however, one may be relieved of the effect of a mistake of law. See Benson v. Markoe, 37 Minn. 30, 34, 33 N. W. 38, 5 Am. St. 816; Gerdine v. Menage, 41 Minn. 417, 421, 43 N. W. 91; Lane v. Holmes, supra; Truesdale v. Sidle, 65 Minn. 315, 67 N. W. 1004; Dodge v. Kennedy, 93 Mich. 547, 53 N. W. 795; Pomeroy, Eq. Jur. (3d Ed.) 839, 849. The rule established by these authorities is, as reiterated in Forest Lake State Bank v. Ekstrand, 112 Minn. 412, 416, 128 N. W. 455, that equity will relieve from a mistake of law where one party by availing himself thereof will secure without consideration an unjust advantage of the other party, who is blameless in the premises. Certainly it seems that Sutton's failure to pay the 50-cent registration tax comes within the rule, wherefore

his redemption should be recognized and adjudicated effective, thereby preventing grave consequences as the result of trivial, and in no sense wilful, fault.

But assuming this position untenable, what is plaintiff's standing to seek equitable relief? What is he other than an intermeddler seeking speculative gain through his own wrong, thus attempting to pervert the redemption law? Legally he had a lien when he redeemed, for, under our decisions, the tender did not destroy that; but it was a naked, technical lien, existing merely because his wrong had not yet been remedied by wiping his judgment from the records. After the tender, or at least so long as it continued to be operative, no remedial right thereon remained against Sauntry except as to the money tendered. Rother v. Monahan, 60 Minn. 186, 188, 62 N. W. 263. Only as a creditor with a vested right to have the property applied to the satisfaction of his debt did he have any right to redeem. Sprague v. Martin, 29 Minn. 226, 232, 13 N. W. 34. After the tender, therefore, he had no better standing to redeem than one without a lien, who, as declared in Nelson v. Rogers, 65 Minn. 246, 248, 68 N. W. 18, has no such specific interest in the property as to constitute him a proper redemptioner under the statute. Such also is the rule declared applicable in the present case, so that "any further attempt to proceed against the land in question after such tender must be considered wrongful;" but nevertheless Orr's redemption is upheld because Torinus, the purchaser, accepted the money. In short, it is held, in effect, that one having no right to redeem may do so and thus acquire title to the land, if no one entitled to object does so. Upon the same reasoning it would seem that the necessity of a lien or some specific interest in the property as the basis of the right to redeem could be waived, which certainly is not the law as heretofore understood by this court. See Todd v. Johnson, 50 Minn. 310, 313, 52 N. W. 864. It is difficult to comprehend how this holding consists with the nature of the creditor's rights under the statute, after the year for redemption by the mortgagor has expired, such being the equitable substitute for his prior right to subject the property to execution (Powers v. Sherry, 115 Minn. 290, 294, 132 N. W. 210), or with the character of the relief sought, the same being es-

sentially equitable (Mathews v. Lightner, 85 Minn. 333, 336, 88 N. W. 992, 89 Am. St. 558). To grant plaintiff any relief in the premises is not only to place a premium upon wrongful speculation by creditors, but also to forget that equity should not be oblivious to the stain on plaintiff's hands, nor need a complaining defendant to close its doors to one who comes limping upon a crutch of wrong. Had plaintiff alleged the facts regarding the tender his complaint would unquestionably have been demurrable, and he should not be held to be in any better position with the proofs in to the same effect.

But can it properly be said that none of the defendants are in position to object to plaintiff's redemption? Assuming that Sutton, as a subsequent lienholder, was not, and accepting as sufficient predicate for an estoppel or waiver, the statement of the court that "there is nothing in the record to suggest that Torinus did not have full knowledge of the tender when he accepted and receipted for the money" paid on plaintiff's redemption, the question of Sauntry's right still remains. Under the reasoning of Rother v. Monahan, supra, he could have maintained an action, after tender to restrain plaintiff from attempting to enforce the judgment for any purpose, and must have prevailed; from which it would seem to follow that he could resist its enforcement by objection to redemption. The only escape from this conclusion lies in the determination of the court, following Willard v. Finnegan, 42 Minn. 476, 44 N. W. 985, 8 L.R.A. 50, that after Sauntry's year of redemption expired he had no interest in the property to protect and was without right to question Orr's redemption or to take steps necessary to insure redemption by Sutton. Here it is the court seems to lose sight of Sauntry's rights, both legal and equitable. The mortgagor's rights were summarily disposed of in Willard v. Finnegan, supra, without discussion and seemingly with little consideration, whereas under the rule of Rother v. Monahan, supra, he "must be presumed to have had some interest in preventing such a redemption." This presumption should be conclusive for the reason, if no other, that the mortgagor is necessarily concerned in carrying out the policy of the law, declared in Martin v. Sprague, 29 Minn. 53, 56, 11 N. W. 143, 145, "to save the property of debtors from being sacrificed, and to enable debtors

to retain their property; or, if they shall fail to do so, then to secure its application, so far as may be, to the payment of the demands of creditors." To effect the latter purpose his interest extends beyond the expiration of his redemption period; for to make the two co-terminous would be to deny him the right to seek the accomplishment of that end. As was said in the Rother case, it well may be that, though he has lost the right to redeem, he may have some advantageous arrangement with a particular creditor looking to the saving of the property or valuable rights therein, or else, it may be added, he may require protection from the effect of prior covenants. See Allis v. Foley, 126 Minn. 14, 147 N. W. 670. It may be that he can neither redeem nor make any advantageous arrangement during the year, but can thereafter secure valuable concessions from one creditor, though not from another. Should he then be deprived of the right, by tender, to eliminate the latter from the succession of redemptioners, thus removing an obstacle to the effectuation of his plans? Having an absolute right to make the tender, he should be accorded the unconditional right to avail himself of the benefit thereof, without the expense, delay, annoyance and uncertainty incident to litigation of an issue as to whether he will in fact be benefited, especially as against the creditor who has wrongfully refused such tender. Though he cannot, after expiration of his redemption period, be regarded as having any title whatever to the property, as former owner thereof he should be dealt with as leniently as possible and afforded every opportunity consistent with the rights of others to save what he can out of it, both for his own and his family's benefit. These considerations should certainly outweigh the claims of one asserting merely technical rights based upon a claim for money of which he will not be deprived by their denial.

The injustice, departure from the settled policy of the redemption law, and danger involved in the rule established by the majority opinion would be clearer if Sutton's mortgage had secured $50,000 instead of $50. Yet the court's reasoning would require the same holding in such case, including denial of the right of redemption to one who, under very recent decisions, unquestionably had an equitable lien upon the property and was thus strictly within the statutory

designation of those entitled to redeem, and who, in matter of procedure, was generally, if not technically, within the law.

Finally, neither Sutton nor Sauntry should be deprived of any right here claimed because of Torinus' acceptance of the money paid on Orr's redemption.

I think the order should be reversed.

HALLAM, J. (dissenting).

I dissent.

It is conceded that the redemption by plaintiffs was void; that when, after tender to them of the amount of their judgment, they persisted in using this judgment for the purpose of redeeming the land of their debtor from a sale on a prior lien, such use of the judgment was wholly in their own wrong, and that, upon demand of a party having a proper interest to conserve, the court would set aside the attempted redemption and compel the plaintiffs to accept the tender and satisfy their judgment. Mitchell, J., in Rother v. Monahan, 60 Minn. 186, 62 N. W. 263.

The position of the majority of the court is that none of the defendants are in a position to take advantage of the admitted invalidity of plaintiffs' redemption and that accordingly plaintiffs must get the land; that these defendants who are manifesting such intense interest in this litigation either have no interest in the subject matter at all, or else they have by their conduct precluded themselves from asserting their rights.

To this I do not agree. I am of the opinion that William and Lyman Sutton, by virtue of their interest in the certificate from which plaintiffs' redemption was made, are in a position to object to the use of this judgment by plaintiffs for the purpose of redemption.

The relation of these defendants to the property is undisputed. Torinus held the sheriff's certificate from which plaintiffs attempted to redeem. It is conceded that Torinus was not the sole beneficial owner of this certificate. The fact is that William Sutton and Lyman Sutton had undertaken the task of redeeming the property of their uncle William Sauntry from the foreclosure sale and from other subsequent liens. They set about to raise the money to purchase the

sheriff's certificate of sale then held by the Weyerhaeusers, and also what is known as the Franklin judgment. This required over $45,-000, more money than they had. William Sutton furnished $15,800, Lyman Sutton $12,980. Torinus loaned them $7,500. He was to be repaid this amount in any event, and $10,000 if they got the property. They borrowed the balance in small amounts from various parties. These facts were undisputed, and the court was asked to so find, but declined to do so. The Suttons were the real beneficial owners of the sheriff's certificate from which plaintiffs undertook to redeem. This is virtually conceded.

It follows that the Suttons may challenge this redemption by plaintiffs, unless they have in some manner estopped or precluded themselves from exercising that right. There is no claim of estoppel in the proper sense of that term. They have done no act upon which plaintiffs have in any sense relied. The claim is that, under the doctrine of Willard v. Finnegan, 42 Minn. 476, 44 N. W. 476, 8 L.R.A. 50, Torinus, and all claiming under him, have waived their right to object to the plaintiffs' redemption. Referring to plaintiffs' brief on reargument, they say: "He (Torinus) cannot raise the question because he has accepted and retained the plaintiffs' money and has thereby waived all irregularity and invalidity in the redemption proceedings;" and again: "If Sutton was a joint owner with Torinus then the act of his joint owner (in whose name the certificate for convenience had been placed) in accepting and retaining the money of the plaintiffs certainly estopped him (Sutton) and the same result must necessarily and logically follow if Lewis E. Torinus was holder of the certificate as a sort of trustee." The alleged waiver or estoppel is predicated on these facts:

It is admitted that the money paid by plaintiffs to the sheriff was received by Torinus and turned over by him to William Sutton, and that William Sutton immediately used it for the purpose of an attempted subsequent redemption from plaintiffs under the $50 mortgage. The two Suttons were acting in unison, and the act of one doubtless bound both. This act, plaintiffs claim, cut the ground from under their feet and left them no standing to assail the invalidity of plaintiffs' redemption. Curiously enough, neither this al-

leged waiver nor the facts out of which it is claimed it arose were pleaded by plaintiffs, either in the complaint or reply. Had the case been tried on the pleadings, plaintiffs' case must surely have failed. Evidence of the facts mentioned was, however, received without objection and the failure to plead is accordingly not of vital importance.

The fact is, William Sutton also claimed a lien under his $50 mortgage subsequent to plaintiffs', if plaintiffs had any lien at all, and under this alleged subsequent lien he claimed a right to effect a subsequent redemption. It turned out that neither plaintiffs nor William Sutton under this latter alleged lien had any legal right to redeem. William Sutton and the others interested in the Torinus certificate could have resisted the claim of plaintiffs to redeem. But William Sutton did not want to stand on this ground alone. No one claims he was obliged to. He wanted also to assert his own right to redeem under his own alleged later lien. What he did do in effect was to take $45,000 or more left with the sheriff by plaintiffs and immediately handed it back to plaintiffs with the amount of their judgment added. It was therefore used to restore to plaintiffs what they had paid out in making redemption under their lien, and for no other purpose.

The intervention of the sheriff in these redemptions was not important. He was a mere conduit. The effect was the same as though Sutton had received the money from plaintiffs in person and in person handed it back to plaintiffs. The majority opinion holds this conclusive evidence of a waiver of the indisputable right that Sutton then had to assert that plaintiffs' redemption was void. The consequence of holding this conclusive of a waiver is of great importance in this case. It means that the Suttons were under the necessity of either standing solely upon their claim of the insufficiency of plaintiffs' redemption, or else raising another $45,000 to place in the sheriff's hands to await the outcome of a determination of that question of right. Such a requirement was onerous. We may infer from the methods the Suttons were obliged to use, and the number of persons upon whom they were obliged to draw to raise the first $45,000, that they could never have raised another similar amount at all. Persons who redeem without any right, as plaintiffs did,

should not have it in their power to put a party, who of right owns property, to any such alternative. The Suttons might properly have said to plaintiffs: "Here is your money. If your redemption is wrongful you are entitled to your money back; if your redemption is valid, we still claim a right to redeem from you, and then you are entitled to the same amount plus the amount of your judgment lien. Here it is. It will serve no useful purpose to require us to go elsewhere and raise another $45,000 so as to leave with the sheriff for you two rolls of money, one for you to take if your redemption is valid, the other if it is void. It may be admitted there is some technical justification for such a proceeding. As a practical proposition, however, the placing of two such sums in the hands of the sheriff would simply impose on us a tremendous burden which would not benefit you. You could not have it all in any event. To require such a course would be to sacrifice substance to form."

Here is involved not the mere question of waiver of some technical formality in procedure, but the acquisition through an alleged waiver of the title to property of great value.

Waiver has been defined as "a technical doctrine introduced and applied by the courts for the purpose of defeating forfeitures." 40 Cyc. 254; Kierman v. Dutchess County Mut. Ins. Co. 150 N. Y. 190, 196, 44 N. E. 698. Waivers, where they operate to dispense with merely formal requirements in judicial procedure and to defeat forfeitures, are, and should be, favored, but where the sole effect of a waiver is, not to defeat forfeiture, or dispense with formality, but to deprive a party of some substantial property rights without any substantial consideration, i. e., in fact to work a forfeiture, a waiver should not be favored and should not be extended by the application of merely technical rules. In such cases it should be necessary, to make a waiver effective, that the party claiming it should have been led to act upon the facts going to make up the waiver to his detriment. Bigelow, Estoppel (6th ed.) §§ 730, 731. Had the Suttons not taken this redemption money, their title to this property would be secure. I am not willing to hold that the defendant William Sutton, by the act of merely receiving this redemption money and immediately tendering it back to plaintiffs, passed the title and interest

of these parties to this valuable property to plaintiffs. No decided case has ever so held. In every case where the certificate holder has been held estopped, the record shows that he accepted and appropriated the money in such a way as to deprive the redemptioner of it.

Plaintiffs use the term "waiver" and I have done the same. This question is perhaps more properly a question of election than waiver. It is conceded that a man cannot ordinarily occupy inconsistent positions. By acceptance of benefits of a transaction he may bar himself from repudiating the transaction. Pederson v. Christofferson, 97 Minn. 491, 496, 106 N. W. 958. But the taking of one of two inconsistent positions will not always preclude the party taking it from later availing himself of the other, if no prejudice is done to anyone thereby. As to this, Mr. Bigelow, in his work on Estoppel, in treating the subject of "election and inconsistent positions generally" says: "However, the estoppel arising from accepting the benefits of a contract applies only when the party may accept or reject without serious inconvenience." This is an unquestioned rule as applied to contracts. Bigelow, Estoppel (7th ed.) p. 747; City of Cincinnati v. Cameron, 33 Oh. St. 336, 374; Zottman v. San Francisco, 20 Cal. 98, 81 Am. Dec. 96 (Field, C. J.); Potter v. Brown, 50 Mich. 436, 15 N. W. 540 (Cooley, J.); Black v. Dressell's Heirs, 20 Kan. 153 (Brewer, J.). As said by Field, C. J., in 20 Cal. 107, 81 Am. Dec. 96, "the party must also be in a situation where he is entirely free to elect * * *. The mere retention and use of the benefit resulting from the work where no such power or freedom of election exists, or where the election cannot influence the conduct of the other party with reference to the work performed, does not constitute evidence of acceptance." The same principle is applicable here. Defendants Sutton in this case had no real freedom of choice. The statutes did not permit them to wait until the regularity of plaintiffs' redemption could be tested before making redemption under their claimed subsequent lien. They were obliged to act within five days. They could not, without serious inconvenience, which as a practical proposition probably amounted to impossibility, leave this large fund in the hands of the sheriff, and at the same time avail themselves of their right to make or attempt to make their subsequent

redemption. In my opinion they did not lose their right to question plaintiffs' void redemption by receiving from plaintiffs this money and forthwith offering to return it to them in the manner disclosed by the record in this case.