HUNT et al. v. ORR et al.

(Circuit Court of Appeals, Eighth Circuit.   October 29, 1917.)

No. 4803.

1. TRUSTS ⬦⟶103(4)—CONSTRUCTIVE TRUSTS—ATTORNEYS.

Defendants, attorneys at law, to whom an incorporated collection agency sent for collection an account, reduced the same to judgment. Practically the sole asset of the judgment debtor was a statutory right of redemption from foreclosure sale of his half interest in mining property which was subject to a mortgage of $30,000. Three months of the debtor's period of redemption had expired when the judgment was obtained, and, while the holders of several judgment liens were successively entitled within short periods to redeem in case the right was not exercised by the debtor, it would require payment of nearly $45,000 for the holders of the judgment to redeem. Less than a month after rendition of the judgment defendants purchased it from their clients, receiving an assignment, and two weeks later they wrote the collection agency from which they received the claim a letter, which, taken in connection, with the prior correspondence, sufficiently informed their clients of the facts in the case. At this time defendants offered to reassign the judgment upon a refund of the amount paid, plus their fees. *Held*, that as complainants, the clients, declined, through the collection agency defendants' offer, they cannot, defendants having redeemed the property and thus acquired title by use of the judgment, hold defendants as trustees on the theory that they misrepresented the value and collectibility of the judgment, for defendants acquired title only through a series of errors by third persons.

2. TRUSTS ⬦⟶103(4)—CONSTRUCTIVE TRUSTS—INFORMATION.

Where the proposal and information contained in defendants' letter offering to reassign the judgment was communicated to complainants, the judgment creditors, a trust could not be predicated on the theory that the collection agency was no longer complainants' representative; the judgment having been previously assigned, and that information to it was not information to complainants.

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by Robert W. Hunt and others against Charles N. Orr and others. From a decree for defendants, complainants appeal. Affirmed.

William D. Bailey, of Duluth, Minn. (Oscar Mitchell, Jed. L. Washburn, and Albert C. Gillette, all of Duluth, Minn., on the brief), for appellants.

Frank B. Kellogg and William G. White, both of St. Paul, Minn. (Theodore Hollister and C. C. Haupt, both of St. Paul, Minn., on the brief), for appellees Charles N. Orr and others.

John W. Gilger, of Minneapolis, Minn., for appellees Charles N. Spratt and others.

Before HOOK, CARLAND, and STONE, Circuit Judges.

HOOK, Circuit Judge. This is a suit by Hunt & Co. of Chicago, Ill., to charge Orr, Stark & Collett, a firm of attorneys at law at St. Paul, Minn., and others, as trustees for them of a half interest in a mining property in Northern Minnesota, and for an accounting, upon the ground that the defendant attorneys purchased from them a judgment, while the relation of attorney and client existed, by misrepresenting its value and collectibility, and afterwards used the judgment in acquiring the property in question. The trial court entered a decree for the defendants on the merits, and the plaintiffs appealed.

[1] The case is within a narrow compass of fact. The plaintiffs had an account against one Sauntry of Minnesota, who was considerably involved in debt. They sent it to an incorporated collection agency in Chicago for collection, and the latter sent it to Orr, Stark & Collett who brought suit in the name of plaintiffs, and recovered judgment for $741.38. The judgment was rendered December 19, 1910. Practically the sole asset of Sauntry, the judgment debtor, was a statutory right of redemption from a foreclosure sale of his half interest in the mining property under a mortgage for $30,000. His period of redemption was 12 months from the sale, 3 of which had expired when plaintiffs' judgment was obtained. There were also several judgment liens on the property, the holders of which were under the Minnesota statute successively entitled within short periods to redeem if no redemption was made by Sauntry. If Sauntry redeemed, his property automatically became subject to the judgments. The amounts of the foreclosure sale and the judgments ahead of the plaintiffs' aggregated about $44,000, which plaintiffs would have had to pay if they redeemed.

On January 10, 1911, the defendant attorneys purchased the plaintiffs' judgment for $275, and took an assignment of it. In the fall of that year, having secured financial aid, and Sauntry having failed to redeem, they utilized their position as judgment creditors by redeeming from the foreclosure sale and prior liens; and eventually, after considerable litigation in the courts of Minnesota, they secured an affirmance of title in them to the Sauntry property. Orr v. Sutton, 119 Minn. 193, 137 N. W. 973, 42 L. R. A. (N. S.) 146; Id., 127 Minn. 37, 148 N. W. 1066, Ann. Cas. 1916C, 527. The property was worth much more than the money they invested. If the case stood as

at the time the judgment was purchased, there would be grave reason for plaintiffs' contention that the attorneys did not perform the duty imposed by their fiduciary relation of fully and fairly disclosing what they knew of the value and collectibility of the judgment. But two weeks later, January 25, 1911, they wrote the collection agency from which they received the business a letter which we think, taken in connection with the prior correspondence, contained sufficient information. They also offered to surrender the assignment upon a refund of the amount paid for it, plus their fees in the case. The collection agency advised them that the plaintiffs regarded the matter as closed, and that it did not think it advisable to reopen it. We need not consider whether this letter was an admission of previous fault, and resulted from the wiser counsel of a member of the firm who had not theretofore actively participated in the transaction, or was due to a realization of a greater value of the judgment or to some other cause; for the fact remains that there was an offer to restore the original status, and all the information was given that could reasonably have been required in the relation and the circumstances. In declining the offer the plaintiffs were undoubtedly influenced by the necessity of putting up temporarily over $40,000 to gain the difference of the few hundreds between the amount of their judgment and the amount paid them for it. That necessity was unavoidable, and it was enough to deter them. We put aside what happened at the redemptions about 8 months afterwards. The chance of obtaining title to the valuable property by use of the judgment was too negligible, too remote to be a factor of value. If the large redemption fund were raised, it might have been expected to force the payment of the small judgment by others interested, but more than that was not reasonably conceivable at the time. That it resulted as it did was due to a series of errors by those who were dealing too narrowly and technically with Sauntry's judgment debts.

[2] It is contended that the letter of January 25th to the collection agency should not be regarded because the connection of the agency with the matter ceased when the judgment was assigned on January 10th; that the affair was closed and the agency was no longer the plaintiffs' agent or representative. As to this defendants invoke the doctrine of Hoover, Assignee, v. Wise, 91 U. S. 308, 23 L. Ed. 392, and say that as the plaintiffs intrusted the business to the collection agency and the latter employed the attorneys and conducted with them all the material correspondence about the suit, the judgment, the assignment, etc., the collection agency, not the plaintiffs, was the client of the attorneys. We need not determine this, because we approve of the finding of the trial court that the substance of the letter of January 25th was communicated from the collection agency to the plaintiffs, and that the latter, sufficiently advised of the situation, decided to let the matter rest as it was.

The decree is affirmed.